**UNITED STATES of America,**
**Appellee,**

v.

**Eugene JONES, Appellant.**
**No. 263, Docket 27157.**

United States Court of Appeals
Second Circuit.

Argued Feb. 15, 1962 to a Panel.

Submitted to in Banc Court
April 3, 1962.

Decided Aug. 17, 1962.

Moore and Smith, Circuit Judges, dissented.

28

Anthony F. Marra, New York City (Leon Polsky, New York City, of counsel), Legal Aid Society, for appellant.

Robert M. Morgenthau, U. S. Atty., S.D.N.Y. (Arthur I. Rosett, Jonathan L. Rosner, New York City, of counsel), for appellee.

Before CLARK, WATERMAN, MOORE, FRIENDLY, SMITH, KAUFMAN, HAYS and MARSHALL, Circuit Judges.

WATERMAN, Circuit Judge, with whom CLARK, FRIENDLY, KAUFMAN, HAYS and MARSHALL, Circuit Judges, concur.

The appeal, now before the *in banc* court, was originally argued before a panel of three judges, Judges SMITH, HAYS and MARSHALL. Inasmuch as appellant had been convicted of a substantive violation of 21 U.S.C.A. § 174, and, upon appeal, the Government had argued that the conviction was not only sustainable as a violation of that section but was also sustainable on an alternative ground under 18 U.S.C. § 2, the judges of the court unanimously voted to consider the appeal *in banc* in order to clear up any confusion that might exist as to our previous interpretations of these statutes in U. S. v. Santore et al., 290 F.2d 51 (2 Cir. 1960), certs. denied [D'Aria v. U. S., Lo Piccolo v. U. S., Cassella v. U. S., Santore v. U. S., Orlando v. U. S.], 365 U.S. 834, 835, 81 S.Ct. 745, 746, 749, 752, 5 L.Ed.2d 743, 744, 745, and in U. S. v. Hernandez, 290 F.2d 86 (2 Cir. 1961), and see id. at 91, 93 (Moore, J., dissenting).

No further oral argument was had, and the case was submitted to the *in banc* court on April 3, 1962. Chief Judge LUMBARD, deeming himself disqualified, did not participate in the final decision on the merits.

Defendant appeals from a judgment of conviction entered after the trial judge, sitting without a jury, found him guilty of a substantive violation of 21 U.S.C.A. § 174. At the conclusion of the trial defendant was acquitted on a charge of conspiring with another to violate the same section.

Pursuant to F.R.Crim.P. 23(a), 18 U.S.C., the trial judge found the following to be the evidentiary facts:

"At about 5:00 P.M. on January 10, 1961 Jacob F. Brown (Brown), then an agent for the Bureau of Narcotics, was seated in the Hollywood Bar on West 116th Street, between Lenox and Seventh Avenues, in the Borough of Manhattan, City and State of New York and Southern District of New York.

"He was then and there approached by defendant Eugene Jones (Jones) who greeted Brown and inquired as to the purpose of Brown's being in the bar. When informed by Brown that he sought to purchase heroin, Jones advised Brown that Brown would be unable to get any because the police had arrested five

persons in the bar the evening before and that no one was selling 'stuff' at that time.

"Jones then offered to introduce Brown to Jones's 'connection, who deals good stuff.'

"Brown and Jones then left the bar and walked to West 115th Street, between Lenox and Seventh Avenues, and entered 111 West 115th Street. They proceeded to the rear right of the hall where Jones knocked on a door and upon response asked for 'Big Charlie.' The door was opened by an unidentified man who stated that Charlie was not there then.

"Brown and Jones retraced their steps to the sidewalk in front of the building when Jones said 'There's Charlie now' pointing to a man nearby. Jones left Brown and engaged the indicated man in conversation, out of Brown's earshot. Jones then returned to Brown and advised Brown that he (Brown) 'would be able to get the stuff, and that the price was $150' for an ounce of heroin.

"Jones and Brown then walked to a candy store, east of the building they had entered and waited in the store. While they sat in the store Jones told Brown that 'Charlie was a dealer for himself; that he had one fellow by the name of Mickey who bagged and cut most of his stuff for him.' Jones also, pointing to a

car parked outside, told Brown that it was 'Charlie's car.'

"Soon after, Charlie came to the store window and beckoned to Jones and Brown to come outside, which they did. In Jones's presence Charlie handed Brown a package containing heroin and Brown paid Charlie $150.

"Charlie then told Brown that if the latter wanted any more heroin to come back to 115th Street, 'ask for Big Charlie or for Mickey' and not to deal with anyone else. Charlie then entered the hallway of 111 West 115th Street while Brown remained with Jones.

"Brown asked Jones if Charlie would give Jones anything for the introduction to which Jones replied that he (Jones) would talk to Charlie later but asked Brown what he (Brown) was going to give Jones. They agreed that ten dollars would be fair and Brown then gave Jones that sum."

The findings are supported by the record, and we accept them. From these facts, the trial judge concluded, "Although the evidence otherwise fails to establish that the heroin sold as aforesaid (1) was illegally imported and (2) that Jones knew it, I find both such facts solely by virtue of Jones's unexplained constructive possession, of the said heroin."

It is a federal offense under 21 U.S. C.A. § 174[1] to import narcotic drugs il-

1. That section provides:

"Whoever fraudulently or knowingly imports or brings any narcotic drug into the United States or any territory under its control or jurisdiction, contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of any such narcotic drug after being imported or brought in, knowing the same to have been imported or brought into the United States contrary to law, or conspires to commit any of such acts in violation of the laws of the United States, shall be imprisoned not less than five or more than twenty years and, in addition, may be fined not more than $20,000. For a second or subsequent offense (as determined under section 7237(c) of the Internal Revenue Code of 1954), the offender shall be imprisoned not less than ten or more than forty years and, in addition, may be fined not more than $20,-000.

"Whenever on trial for a violation of this section the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury."

legally or to deal in such drugs with knowledge that they have been illegally imported. The statute further provides that "Whenever on trial for a violation of this section the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury." Inasmuch as the record in this case shows neither illegal importation nor actual knowledge by Jones as to the origin of the drug, the conviction appealed from stands or falls on whether Jones had or had ever had possession of the drug. Two questions are required to be resolved: First, are the evidentiary facts as found by the district judge sufficient to support the conclusion he reached therefrom that Jones had constructive possession of the narcotics? Second, if such a conclusion is not permissible and the first question is answered in the negative, may we nevertheless affirm the conviction on the theory that Jones aided and abetted Moore, who did possess the drug, in executing the transaction, and that Moore's unexplained possession is thereby attributable to Jones? We answer both questions in the negative and reverse the conviction.

### (1) Constructive Possession

"Possession," as used in 21 U.S.C.A. § 174, even though the statute is a penal one, has not been construed with undue narrowness. The term has been interpreted by the courts to encompass power to control the disposition of drugs as well as mere physical custody. Hernandez v. United States, 300 F.2d 114 (9 Cir. 1962); United States v. Hernandez, 290 F.2d 86 (2 Cir. 1961). Those who exercise dominion and control over narcotics are said to be in "possession" under § 174, United States v. Malfi, 264 F.2d 147 (3 Cir. 1959), cert. denied, 361 U.S. 817, 80 S.Ct. 57, 4 L.Ed.2d 63 (1959); United States v. Mills, 293 F.2d 609 (3 Cir. 1961), and physical custody by an agent may be attributed to the principal. United States v. Hernandez, 290 F.2d 86 (2 Cir. 1961). We have said, moreover, in United States v. Hernandez, supra, that one having a working relationship or a sufficient association with those having physical custody of the drugs so as to enable him to assure their production, without difficulty, to a customer as a matter of course may be held to have constructive possession.[2] But a casual facilitator of a sale, who knows a given principal possesses and trades in narcotics but who lacks the working relationship with that principal that enables an assurance of delivery, may not be held to have dominion and control over the drug delivered and cannot be said to have possession of it. Ibid.; United States v. Santore, 290 F.2d 51, 76 (2 Cir. 1960); United States v. Moses, 220 F.2d 166 (3 Cir. 1955).

Turning to the case before us, the Government contends that the district judge's conclusion as to constructive possession is a finding of fact carrying presumptive weight in an appellate court. It further contends that we must draw all possible inferences from that conclusion, namely that Jones set the price, fixed the place of delivery, and otherwise controlled the dealings between Brown and Moore. We cannot agree. Constructive possession is a legal conclusion, derived from factual evidence,

---

2. Cellino v. United States, 276 F.2d 941 (9 Cir. 1960), which has been described as drawing "(t)he most tenuous inference of possession which any appellate court has sanctioned", United States v. Mills, supra, 293 F.2d at p. 611, may be rationalized in this manner. There is no evidence here, however, as there was in Cellino, that the defendant vouched for the narcotics peddler's reliability in delivering the drugs. And, in any event, since we believe our own decision in United States v. Santore, 290 F.2d 51 (2 Cir. 1960) governs the disposition of the issue of constructive possession here, we decline to follow Cellino to the extent that it is inconsistent with our present decision.

that one not having physical possession of a thing in fact nevertheless has possession of that thing in legal contemplation. Properly admitted evidence showing that a given defendant set the price for a batch of narcotics, had the final say as to means of transfer, or was able to assure delivery, may well be sufficient to charge the defendant with a constructive possession of the narcotics, but we may not, however, work backwards and first having taken the conclusion derive therefrom the facts needed to support it.

■ We believe the evidence in this case negates a conclusion that defendant Jones had dominion and control over the narcotics handed to Brown by Moore. The pains Jones took in the first instance to find Moore indicate that Jones was unable to consummate the transaction as a business dealing of his. The price and place of delivery were not even discussed with the would-be purchaser until defendant spoke with Moore. No one can say that Jones established these essential details of the affair unless he engages in speculation wholly unwarranted by the trial record. After consummation of the transaction Moore told agent Brown to purchase directly from him in the future and not to deal with anyone else. This statement by Moore negates a finding that Jones could assure, as a matter of course, delivery by Brown to a customer Jones might discover.

As far as the record discloses, defendant did nothing except to introduce a willing buyer to a willing seller and to serve as a go-between until such time as the willing seller and willing buyer were satisfied to do business with each other. Nothing in the record indicates that Jones had any independent control over the narcotics, or over Moore, or that he was able to assure to Brown that he could produce narcotics. And, unless we are to read the statutory phrase "possession of the narcotic drug" to mean merely "participation in a transaction involving the narcotic drug" we cannot rely on constructive possession here to affirm the conviction below.

### (2) *Aiding and Abetting*

■ We now reach the question of whether, in order to convict one who, having no physical possession of narcotics, purposefully aids and abets [3] another in the sale of narcotics which he knows the other possesses, it is necessary to prove either the defendant's constructive possession of those narcotics or his knowledge of their illegal importation. That question evenly divided the Court in United States v. Santore, supra. A majority of the active judges now hold such proof is necessary.[4]

18 U.S.C. § 2 is the governing statutory provision.[5] It defines a principal for purposes of the federal criminal code, and its effect is to erase whatever distinctions may have previously existed between different classes of principals and between principals and aiders or abettors. The section does not create new substantive offenses. It merely states who the actors are that are punishable as violators of federal penal statutes. In short, if a certain knowledge or intent is required to be proven in order to convict one of violating a federal criminal statute, the proof to convict one as an aider and abettor will not be different.

---

3. There can be little question but that Jones purposefully aided and abetted a violation of 21 U.S.C.A. § 174 if Moore's possession is attributable to Jones.

4. Since Jones was acquitted on the conspiracy count, we need not decide the unresolved question of whether possession by one conspirator is attributable to all. See United States v. Santore, supra; United States v. Hernandez, supra, 290

F.2d at p. 90; United States v. Monica, 295 F.2d 400, 402 (2 Cir. 1961). But see Hernandez v. United States, supra.

5. That section provides in part:
 "Principals
 "(a) Whoever commits an offense against the United States, or aids, abets, counsels, commands, induces, or procures its commission, is punishable as a principal."

from that necessary to convict the violator, except that aiding, abetting, commanding, inducing, or procuring the commission of the crime must be proven rather than actual commission. It has been held, therefore, that a defendant charged in an indictment as one who violated a penal statute may be convicted of having done so on proof that he aided and abetted an actual violator. E. g., United States v. Shaffer, 291 F.2d 689, 693 (7 Cir.), certs. denied, 368 U.S. 914, 915, 82 S.Ct. 192, 7 L.Ed.2d 130 (1961); Grant v. United States, 291 F.2d 746, 749 (9 Cir. 1961), cert. denied, 368 U.S. 999, 82 S.Ct. 627, 7 L.Ed.2d 537 (1962). Cf. U. S. v. Rappy, 157 F.2d 964 (2 Cir. 1946), cert. denied, 329 U.S. 806, 67 S.Ct. 501, 91 L.Ed. 688 (1947). In light of this, we cannot hold that if one element of knowledge must be established to convict a principal that knowledge need not be proven to convict an aider and abettor. As Judge Browning of the Ninth Circuit said in a recent decision dealing with this precise issue:

"The aider and abettor is made punishable as a principal, not as an offender in some special category, and the proof must encompass the same elements as would be required to convict any other principal: '(T)o find one guilty as a principal on the ground that he was an aider and abettor, it must be proven that he shared in the criminal intent of the principal * * *.' Johnson v. United States, 195 F.2d 673 (8th Cir. 1952). Again, to argue that the proof of the intent necessary to make defendant an aider and abettor may be supplied by attributing possession of narcotic drugs to the defendant on the ground that he *is* an aider and abettor of a principal who is shown to have actual or constructive possession, is to assume the premise which one purports to prove." Hernandez v. United States, 300 F.2d 114, 123 (9 Cir. 1962).

A problem analogous to the one before us has arisen under 18 U.S.C. § 659, relating to the theft of goods in interstate commerce. Under that statute it has been held that, absent an explanation satisfactory to the trier of fact, proof of possession of recently stolen goods is sufficient to warrant an inference that the possessor knew the goods were stolen. E. g., Wilson v. United States, 162 U.S. 613, 16 S.Ct. 895, 40 L.Ed. 1090 (1896); United States v. Minieri, 303 F.2d 550 (2 Cir. May 31, 1962). On an aiding and abetting theory, the Government sought to convict, in United States v. Carengella, 198 F.2d 3 (7 Cir.), cert. denied. 344 U.S. 881, 73 S.Ct. 179, 97 L.Ed. 682 (1952), two defendants who had collected the payoff. The court held that proof of guilty knowledge or of possession was necessary to convict under 18 U.S.C. § 2. In a similar case, Pearson v. United States, 192 F.2d 681, 694 (6 Cir. 1951), it was stated, "Once the possession of recently stolen property is proved, the burden is on the accused to proceed with an explanation to show his innocence. But in a case where he is charged with aiding and abetting, the mere fact of aiding and abetting in the possession of property does not give rise to inferences of guilty knowledge * * *" Our treatment of the relation between 18 U.S.C. § 659 and 18 U.S.C. § 2 has been the same. See United States v. Lefkowitz, 284 F.2d 310 (2 Cir. 1960).

The analysis of the relationship between 18 U.S.C. § 2 and 18 U.S.C. § 659 is applicable to the relationship between 18 U.S.C. § 2 and 21 U.S.C.A. § 174. The Government must establish guilty knowledge on the part of the defendant to convict him of aiding and abetting the illegal sale of narcotics. It may prove this knowledge directly or it may prove it through the presumption of possession, actual or constructive, as we have defined that term in our discussion of possession earlier in this opinion. The Government cannot, however, rely on the mere fact of the defendant's knowledge that another

póssesses narcotics for sale, short of possession by the defendant himself, to establish the requisite scienter on the part of the defendant. An unexplained possession of narcotics is a criminal act. However, one may legally possess narcotics. Therefore proof of possession is only presumptive evidence of the commission of a crime, which the defendant may rebut by a credible explanation of his possession. Seemingly the theory behind the statute that shifts the burden of proceeding in this unusual way is that one who possesses goods, the possession of which could well be criminal, is best able to explain the source of and the reasons for his possession. This theory, however, does not permit us to charge an aider or abettor with the principal's prima facie criminal possession, for that would force the abettor into a situation that would require him to explain away not his own possession of goods but someone else's possession of them. And, in fact, inasmuch as the absent principal who possessed the narcotics might have an explanation proving that they were either legally imported or were of native origin, one charged as an aider and abettor to that principal might be convicted by his inability to rebut the presumption even though in fact the principal had not violated a penal statute at all. Hernandez v. United States, 300 F.2d 114 (9 Cir. 1962). We must keep in mind that we are dealing here with the interpretation to be placed on 18 U.S.C. § 2 and are not explaining 21 U.S.C.A. § 174. While it may be tempting to rewrite § 174, the Government's contentions as to § 2, if accepted, would affect criminal statutes not pertaining to traffic in narcotics. They would, moreover, introduce new distinctions between principals and aiders and abettors, precisely the result § 2 was designed to avoid.

 The Government's final contention is that all that is required to convict one of having violated 21 U.S.C.A. § 174 is proof that he participated in a transaction with knowledge that the commodity involved therein was a narcotic.

The violence this contention does to the language of the statute that explicitly requires that the violator have knowledge of the illegal importation of the narcotic, not merely a knowledge that the commodity is a narcotic, is sufficient to force a rejection of the contention.

The Government is dissatisfied with the statute as drafted, particularly with respect to the need, in order to convict a defendant, to show that he either had knowledge of illegal importation of the narcotic dealt with or that he had "possession" of the drug. We are keenly aware of the acute national problem created by the illicit traffic in narcotics, and share with the general public a detestation of that business. Nevertheless, our personal revulsion at the activities sought to be federally proscribed here does not override our sworn duty as judges to uphold and enforce the laws of Congress as Congress enacted them. Violation of the present federal statute is explicitly premised, apparently for constitutional purposes, on the requirement that the drugs dealt with by the defendant must have been illegally imported into the United States. The Government's dissatisfaction with that statute is misdirected when brought to the attention of the courts rather than to the attention of Congress.

We are indebted to the Legal Aid Society and to its appellate counsel for a most able presentation in appellant's behalf.

The conviction of the defendant below is reversed and his acquittal ordered.

MOORE, Circuit Judge (dissenting).

There was no legal question, important or otherwise, justifying a hearing *en banc* in this case. This conclusion is apparent from the result reached by the majority which is solely an interpretation of the facts which differs from that of the trial court. This is scarcely an appellate function.

The majority would recast the factual mold to have the record establish that

a man named Brown met a friend named Jones and merely in response to the statement that he (Brown) wished to purchase heroin said that there was a seller named Big Charlie and that he (Jones) would introduce him. As they interpret the facts "defendant did nothing except to introduce a willing buyer to a willing seller and to serve as a go-between, until such time as the willing seller was satisfied to do business with the willing buyer." Were this all there were to the case, the trial judge would undoubtedly have acquitted. But in fairness to the judge and to resort to the oft-used legal cliche of "having seen and heard the witnesses," the trial judge's findings were quite different and, in my opinion, not open to re-interpretation or speculation by us. Examining the facts as found, I observe (not find) that Jones was far more interested in the transaction than telling Brown, "Go to Big Charlie, 111 West 115th Street." To the contrary, he held Big Charlie out as his "connection"; he represented that he (Big Charlie) dealt in "good stuff"; when they went to the address it was Jones not Brown who went to Big Charlie's apartment; not finding him there but meeting him on the street, it was Jones not Brown who approached Big Charlie and engaged him in conversation; and it was Jones who, after his talk with Big Charlie, stated the price ($150) and secured Big Charlie's willingness to deliver. Jones stayed with Brown until delivery was completed. Thus, Jones's acts bring him directly within the definition given by Judge Clark (Judge Waterman concurring) in United States v. Hernandez, 2 Cir., 1961, 290 F.2d 86, 90, of a person in constructive possession, i. e.:

"Moreover, a person who is sufficiently associated with the persons having physical custody so that he is able, without difficulty, to cause the drug to be produced for a customer can also be found by a jury to have dominion and control over the drug, and therefore possession."

The fact that with all three present Big Charlie handed the package directly to Brown and Brown paid Big Charlie $150 would be normal real-life procedure. Certainly I would not infer that Jones would have said, "Being an innocent bystander and to avoid the appearance of being in constructive possession, Big Charlie, please deliver the package directly to Brown." Nor is it unusual for the actual seller and possessor to attempt to by-pass the intermediary by saying, "In the future deal with me directly." This remark in substance has been made in many of the cases in which we have found constructive possession.

Therefore, while I can actually (not constructively) praise the excellent exposition of the law written by Judge WATERMAN, I cannot distinguish this case from the many in which we have held that there was constructive possession. All the facts logically impel an inference contrary to that reached by the majority. Jones participated actively from the moment Brown indicated his desire to the time he had arranged that Brown's desire was fulfilled. I have more than serious doubts that by this decision we "uphold and enforce laws as Congress enacted them," despite the belief of the majority that they are so doing.

SMITH, Circuit Judge (dissenting).

I dissent. I would affirm the conviction here. Jones was a facilitator, with knowledge of Big Charlie's possession, actively promoting the sale by Big Charlie to Brown for Jones's gain. Jones was so far in partnership in the enterprise that Big Charlie's possession is Jones's possession for the application of the presumption of knowledge of illegal importation. See United States v. Santore, 2 Cir. 1960, 290 F.2d 51 concurring opinion at pp. 82, 83.