Andrew LUCERO, Appellant,

v.

UNITED STATES of America,
Appellee.

Frank E. MAESTAS, Appellant,

v.

UNITED STATES of America,
Appellee.

Nos. 7039, 7040.

United States Court of Appeals
Tenth Circuit.

Nov. 30, 1962.

Rehearing Denied in No. 7040,
Dec. 21, 1962.

Certiorari Denied March 4, 1963.

See 83 S.Ct. 883.

Seth, Circuit Judge, dissented as to
one defendant.

**458**

Walter L. Gerash, Denver, Colo., for appellants.

Michael C. Villano, Asst. U. S. Atty. (Lawrence M. Henry, U. S. Atty., on the brief), for appellee.

Before LEWIS, BREITENSTEIN and SETH, Circuit Judges.

BREITENSTEIN, Circuit Judge.

Appellants Lucero and Maestas were charged and tried jointly under a 3-count information for violations of 21 U.S.C. § 174, the counts differing only in the dates and the quantities of heroin. The trial court sustained Maestas' motion for judgment of acquittal on Count 3. The jury found Lucero guilty on all counts and Maestas guilty on Counts 1 and 2.

▮ Lucero's claim of entrapment is without merit. The record shows no luring of an innocent person into the commission of a crime but rather the offer by a federal agent of an opportunity to one who has the intent to commit a crime. In such circumstances there is no entrapment.[1]

▮ Both Lucero and Maestas attack the constitutionality of § 174 but the issue has been consistently resolved against them both by this circuit and by the Supreme Court.[2]

▮ Maestas presents a serious problem of the sufficiency of the evidence. Section 174 proscribes certain dealings in unlawfully imported narcotic drugs by a person knowing of the unlawful importation and provides that proof of possession "shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury." The record shows no actual possession of heroin by Maestas and the information contains no conspiracy charge. To sustain the conviction of Maestas the government contends that he had constructive possession and that he is guilty as an aider and abettor within the purview of 18 U.S.C. § 2.

The conviction on the first count depends on the testimony of federal agent Wolski who, after relating that through the introduction of a third party he had met Lucero and Maestas in a Colorado Springs tavern, testified thus:

"My conversation started with Mr. Maestas, who was sitting across from me and I asked him how much a half ounce of heroin would cost me. He said $250. I asked him the quality and he told me that this heroin could be cut down the middle. Cutting down the middle means to double it. I took out $300 out of my pocket, counted out $250, putting the remaining $50 back in my pocket and asked Mr. Maestas if the deal was to go down here in the booth. He says, 'No, not here,' and he turned to Mr. Lucero and talked in Spanish. Then I directed my conversation to Mr. Lucero and Mr. Lucero tells me, 'Give the money to Willie.' Mr. Maestas had been introduced to me as Willie and in turn Mr. Lucero was introduced to me as Carlos. So, I told him no. I said, 'The money is going to go with me until we see the stuff.' So we finally get out of the booth. Mr. Lucero and I were leaving the tavern and he turned around and he said, 'Did you give the money to Willie?' I says no. He says, 'All right, come on,' so we left the tavern."

Shortly thereafter Lucero delivered a package containing heroin to the agent.

1. Sandoval v. United States, 10 Cir., 285 F.2d 605, 607.

2. See Griego v. United States, 10 Cir., 298 F.2d 845, 848, and cases there cited.

No evidence was offered by the defendants.

The questions arising over the construction and application of § 174 in cases where an agent has dealt with two persons, only one of whom had actual possession of the narcotics, have been discussed comprehensively in the recent cases of United States v. Jones, 2 Cir., 308 F.2d 26, and Hernandez v. United States, 9 Cir., 300 F.2d 114. Any review which we might make of the precedents there considered would have only cumulative value.

■■ Section 174 provides that proof of possession is sufficient evidence to authorize conviction unless that possession is explained to the satisfaction of the jury. This provision eliminates the necessity of proof by the prosecution that the heroin was unlawfully imported and that the accused had knowledge of such unlawful importation. Constructive possession is enough to bring the statutory provision into play [3] even when established by circumstantial evidence.[4]

■ In the prosecution of an aider and abettor the government may not rely on the statutory provision unless the aider and abettor is shown to have had actual or constructive possession.[5] Otherwise, an aider and abettor would be required to explain away not his possession but the possession of another.[6]

The issue is whether Maestas had constructive possession. The evidence on Count 1 shows that Maestas was the moving party, that he vouched for the quality of the heroin, and that he set the price. Actual delivery was made by Lucero after Maestas had talked to Lucero in Spanish. The evidence shows more than mere participation in a narcotics transaction.[7] The inference that Maestas had control over, and was able to assure delivery of, the heroin is reasonable. He may not escape the consequences of his conduct by avoiding actual contact with the contraband drug.

While we hold the evidence sufficient to sustain the conviction of Maestas on Count 1, we reach a contrary conclusion on Count 2. During the Count 1 transaction the agent gave Lucero his Denver phone number. About three weeks later Lucero called the agent and arranged a meeting at a Denver cocktail lounge. When the agent arrived there, he saw Maestas sitting in a car nearby. He approached Maestas who told him Lucero was in the lounge. Later Lucero and the agent walked to a spot several blocks away where Lucero delivered heroin to the agent. While they were returning to the lounge, Maestas drove by and talked to Lucero in Spanish. Soon thereafter Lucero left the agent and entered the car driven by Maestas.

In this episode Maestas made none of the arrangements, was not moving party, and did nothing from which constructive possession may be inferred. He was in the vicinity and drove Lucero away after the transaction was completed. We have recently held that suspicion of guilt is not enough to sustain a conviction and that guilt may not be inferred from mere association.[8] As the information contained no conspiracy count we are not called on to decide whether possession by one conspirator is attributable to all.

---

3. United States v. Santore, 2 Cir., 290 F.2d 51, 76, certiorari denied 365 U.S. 834, 81 S.Ct. 745, 5 L.Ed.2d 743; 365 U.S. 835, 81 S.Ct. 745, 5 L.Ed.2d 743, 745; Cellino v. United States, 9 Cir., 276 F.2d 941, 946.

4. Gallegos v. United States, 10 Cir., 237 F.2d 694, 698. Cf. Sadler v. United States, 10 Cir., 303 F.2d 664, 665.

5. United States v. Jones, 2 Cir., 308 F.2d 26, 31.

6. Ibid. p. 33.

7. Cf. United States v. Hernandez, 2 Cir., 290 F.2d 86, 90, in which the court said: " * * * a person who is sufficiently associated with the persons having physical custody so that he is able, without difficulty, to cause the drug to be produced for a customer can also be found by a jury to have dominion and control over the drug, and therefore possession."

8. Glover v. United States, 10 Cir., 306 F. 2d 594, 595.

The claim of error in the instructions is without merit as no objections to the instructions were interposed in the trial court.[9] An examination of the instructions discloses no plain error affecting substantial rights.

The judgment against Lucero is affirmed on all counts. The judgment against Maestas is affirmed on Count 1 and reversed on Count 2.

SETH, Circuit Judge (dissenting as to defendant Maestas).

I dissent on the ground that the conviction of Maestas was based upon the statutory presumptions which can only arise from possession of narcotics, and such possession was not established. This conclusion is reached reluctantly and with full appreciation for the serious nature of the charges, and the revulsion we all have for traffic in narcotics, and for all those in any way associated with such activities.

The meaning of the word "possession" in the statute and as it has been construed by other courts requires a much stronger showing of dominion and control by Maestas than was made in this case. Under 21 U.S.C. § 174, it is of course required that the heroin be imported into the United States illegally and that the defendant have knowledge that it was so imported. Provision is also made that if it be shown the defendant had possession of the narcotics, such possession shall be sufficient for conviction unless it is satisfactorily explained to the jury. There is no evidence of any knowledge as to the importation; consequently reliance is placed by the government on the statutory presumptions arising from possession. Necessarily before these presumptions arise, a showing must be made that the defendant either had constructive or actual possession of the heroin. The only basis to support the conviction of Maestas was that he was an aider and abettor. The same elements of the offense must be proved as to an aider and abettor as any

principal, and it must be proved that he shared the criminal intent of a principal. Johnson v. United States, 195 F.2d 673 (8th Cir.); Hernandez v. United States, 300 F.2d 114 (9th Cir.). In the absence of any evidence of knowledge of unlawful importation, it must be shown that the aider and abettor had "possession" of the drug. Also in the absence of a satisfactory explanation, this possession is sufficient evidence to authorize conviction (21 U.S.C. § 174). How may possession in the aider and abettor Maestas be shown to support a conviction in the absence of his actual or physical possession? The only contention that can be made by the government is that Maestas had constructive possession or possession was somehow imputed to him by the actual possession shown to have been in his codefendant. There was no charge of conspiracy.

To constitute constructive possession, the party charged must have the drug in his control or under his dominion. Rodella v. United States, 286 F.2d 306 (9th Cir.). Thus if the evidence shows that Maestas was able to control the drug or cause it to be produced, he would have constructive possession although a third person might have physical possession, Rodella v. United States, supra, but this was not shown. This control or dominion could be shared with others and not destroy the constructive possession, Gallegos v. United States, 237 F.2d 694 (10th Cir.), and further such constructive possession may be established by circumstantial evidence, Hernandez v. United States, supra, but again this was not shown. The actual relationship or connection between the co-defendants Maestas and Lucero was not established; an inference can be easily drawn that there was some connection between them. However, the most that was shown as to Maestas on count one was that he and Lucero were together in a tavern when the agent arrived, that they talked to the agent together, that Maestas told the agent the price of heroin, the quality,

9. Rule 30, F.R.Crim.P.; Burns v. United States, 10 Cir., 286 F.2d 152, 157.

and that the deal could not be made in the tavern. Lucero told the agent to pay Maestas but the agent refused until he saw the "stuff." Lucero and the agent left the tavern and Lucero later delivered the drugs and took the money. As to count two, Maestas was shown to be in the vicinity, knew Lucero was in a nearby cocktail lounge, indicated everything was all right, and after the sale by Lucero, out of Maestas' presence, had some conversation with Lucero and left with him (Lucero here again made the delivery and received the money). There is no evidence that Maestas had such dominion or control over the drugs that he could cause them to be produced through or by Lucero or anyone else, nor did he arrange the sale. Further there was no evidence that Lucero and Maestas jointly had control or dominion. The evidence does demonstrate that Lucero could and did produce the drugs for each sale and was paid. It must be concluded that Maestas did not have constructive possession of the drugs within the meaning of 21 U.S.C. § 174.

Since Maestas did not have constructive possession but his co-defendant Lucero had actual possession, may this be somehow imputed to Maestas? No conspiracy was charged and there was no proof of any other type of joint undertaking whereby Maestas was shown to have dominion or control over the drug solely or jointly with Lucero or others. The control is the ultimate test and the legal tag on the relationship between these co-defendants is not particularly helpful. The court in Hernandez v. United States, supra, said:

"We are convinced, on the other hand, that an interpretation of the term 'possession' in Section 174, which would include the possession of a third person, not on trial, with whom defendant has entered into a common scheme or plan or whom he has aided or abetted, but whose possession of narcotic drugs he has neither shared nor controlled, would be inconsistent with the language,

the structure, and the purposes of the statute."

The court then said:

"As we have seen, a definition of 'possession' in terms of dominion and control is amply supported by authority; constructive possession is as much a form of legal possession as is physical custody. But 'possession' of a third person 'imputed' to the defendant is not, in legal terminology, 'possession' of the person to whom it is attributed at all. It is instead the physical or constructive possession of another, for which the defendant is to be made liable. Thus the use of the phrase 'imputed possession' begs the question at issue, which is precisely whether the defendant is to be made liable for the possession of the third person in the circumstances of this case."

Thus there is no basis to impute the possession of Lucero to Maestas by reason of some association between them which the proof does not disclose.

The Second Circuit considered this general problem in United States v. Santore, 290 F.2d 51 (2d Cir.), but the court was evenly divided. Later in Jones v. United States, 308 F.2d 26 (2 Cir.), the problem was again considered by the same court en banc. The facts briefly were that the agent met Jones who took him to a person named Charlie. Jones in the absence of the agent talked to Charlie and then told the agent he would be able to get the heroin at $150.00 an ounce. Shortly thereafter in the presence of Jones, Charlie handed the heroin to the agent and received the money. Charlie then told the agent to deal with him and not anyone else. The court held that Jones did not have possession, and said:

"Nothing in the record indicates that Jones had any independent control over the narcotics, or over Moore, or that he was able to assure to Brown that he could produce narcotics. And, unless we are to read the statutory phrase 'possession of the narcotic drug' to mean merely

462

'participation in a transaction involving the narcotic drug' we cannot rely on constructive possession here to affirm the conviction below."

The facts of the case at bar may be somewhat stronger than Jones but not sufficiently so to bring about a different result nor to make the reasoning less applicable.

This court has recently considered a similar situation arising from the association of several persons charged with narcotic violations in Glover v. United States, 306 F.2d 594 (10th Cir.), and held that the proof as to participation by Glover was not sufficient. There the facts as to Glover's participation are quite similar to the case at bar.

The evidence did not show possession in Maestas either directly or by circumstantial evidence, and I would reverse as to Maestas.