UNITED STATES of America,
Plaintiff-Appellee,

v.

William BENTVENA, William Struzzieri
and Samuel Monastersky, Defendants-
Appellants.

No. 63, Docket 29732.

United States Court of Appeals
Second Circuit.

Argued Oct. 20, 1965.

Decided Feb. 23, 1966.

Howard L. Jacobs, Asst. U. S. Atty., Robert M. Morgenthau, U. S. Atty., Neal J. Hurwitz, Asst. U. S. Atty., for appellee.

Jerome Lewis, Brooklyn, N. Y., for appellants Bentvena and Struzzieri.

Robert Kasanof, New York City, for appellant Monastersky.

Before WATERMAN, MOORE and FRIENDLY, Circuit Judges.

WATERMAN, Circuit Judge:

By this opinion we affirm the convictions of three codefendants, who, having been charged with violations of 21 U.S.C. §§ 173, 174 on January 6 and January 13, 1959, were each severally found by a jury to be guilty as charged. Samuel Monastersky and William Struzzieri were convicted of unlawful involvement on both occasions, William Bentvena as to the January 13 violation only.[1]

On this appeal, appellants Bentvena and Struzzieri argue that the judgments against them should be reversed and the pertinent counts of the indictment dis-

---

1. The indictment out of which these convictions arise was filed on May 5, 1960. It named twenty-nine defendants and contained eight counts. The first trial on the indictment ended in a mistrial after six months. The second trial resulted in the conviction of thirteen defendants, including the present appellants, on counts four and five charging substantive violations of the narcotics laws and on count eight, the general conspiracy count. On June 13, 1963 our court affirmed the convictions of nine of the defendants but reversed the convictions of appellants and the defendant Salvatore Panico and remanded for a new trial. United States v. Bentvena, 319 F 2d 916 (2 Cir.), cert. denied, 375 U.S. 940, 84 S.Ct. 345, 11 L.Ed.2d 271 (1963). This appeal follows the third trial.

missed as to them,[2] because the Government's proof tending to show their guilt was so meager that the trial court erred in failing to direct verdicts in their favor at the close of the Government's case. Appellant Monastersky states his willingness to adopt his codefendants' argument as his own should it commend itself to this court, but he mainly relies upon the argument that the Government should not have been allowed to avail itself of the evidentiary rule contained in 21 U.S.C. § 174[3] because it failed to prove he had possession of the heroin that was the subject matter of the transactions of January 6 and January 13. He concludes that without the benefit of this rule his conviction cannot stand. We take up these separate contentions in order.

## I.

■ The initial issue is whether the evidence presented by the Government during its case-in-chief was sufficient to permit the cases against any or all of these defendants to be submitted to the jury. We look first to the evidence relating to the January 6 transaction in which only Monastersky and Struzzieri were allegedly involved. The case against these two codefendants, based almost entirely on the trial testimony of several federal narcotics agents, can be briefly summarized. On January 5, Agent Giorgio had arranged with Monastersky to purchase from him on the following day one-half kilogram of heroin for $6,000. At about 8:40 P.M. on January 6 several agents observed Monastersky enter 525 East 88th Street. Several minutes later a car arrived on the scene and parked. Struzzieri got out and entered the same building Monastersky had previously entered. A second federal agent, Agent Ward, testified that when Struzzieri left the car and entered the building he was carrying a package wrapped in blue paper on which appeared a white snow man design. Shortly thereafter Struzzieri left the building empty handed and drove off in the same car in which he had arrived. At about 9:30 P.M. one Richard McGovern left 525 East 88th Street carrying a package and proceeded to 448 East 87th Street. A short time later Monastersky brought Agent Giorgio to 448 East 87th Street. There they met McGovern in an apartment in this building, McGovern produced a package wrapped, according to Giorgio, in blue paper on which appeared a white snow man design and the package, when opened, contained a white powder later proved to be heroin. The three men then left the apartment; once outside Giorgio handed McGovern $6,000 and McGovern gave the agent the package, which contained about one-half a kilogram of heroin. Giorgio took the package to an automobile where a third agent, Agent Mangiaracina, was waiting. There was also testimony tending to show that Struzzieri met McGovern for a few minutes later in the evening.

Assuming for the moment that the trial court correctly charged the jury that it could find Monastersky had "possession" of the heroin sold on January 6 sufficient to justify reliance on the rule contained in 21 U.S.C. § 174 it is quite clear that the Government's case against Monastersky relative to this January 6 sale was sufficient to go to the jury. Indeed, the evidence tending to prove that Monastersky was actively involved in this unlawful sale was largely uncontradicted. We surely cannot disturb a

---

2. Appellants Bentvena and Struzzieri seek only a reversal with directions that the indictment be dismissed, they do not seek a new trial.

3. It is a federal offense under Section 174 to import narcotics illegally or to deal in such drugs with knowledge that they have been illegally imported. The statute goes on to provide: "Whenever on trial for a violation of this section the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury." In the present case Monastersky argues the Government did not prove he had or had had possession of the heroin which was the subject of the illegal transactions.

jury verdict based on such evidence. See United States v. Dardi, 330 F.2d 316 (2 Cir.), cert. denied, 379 U.S. 845, 85 S.Ct. 50, 13 L.Ed.2d 50 (1964).

Whether the Government's case concerning the January 6 sale of heroin made out a case against Struzzieri sufficient to go to the jury is a closer question. Essentially, the Government's case against Struzzieri consists of Giorgio's testimony that he received the heroin from McGovern and Monastersky in a package wrapped in blue paper on which appeared a white snow man design, and the testimony of Ward that he observed Struzzieri carrying just such a package enter 525 East 88th Street shortly after Monastersky had entered the building and only a few hours before a package so wrapped was passed to Giorgio. The Government contends this evidence was sufficient to allow a reasonable jury to find that Struzzieri brought to McGovern and Monastersky the heroin that the latter pair then sold to Giorgio. Struzzieri argues that the issue of his guilt should not have been submitted to the jury because crucial testimony of several narcotics agents was "meager," "remote," and "incredible."

In support of his argument Struzzieri first points to the fact Agent Mangiaracina, who waited in an automobile for Giorgio to return with the heroin on the evening of January 6, testified the package Giorgio brought with him to the automobile was brown in color. Unquestionably, this testimony as to the color of the package varied from Giorgio's testimony that the package was blue and white. Nevertheless, the jury could well have determined that Mangiaracina was mistaken in his recollection of the color and that Giorgio's testimony was to be believed. Such a resolution of the variance, which would tend to incriminate Struzzieri, would be supported by the testimony of Agent Ward who stated that the package Struzzieri carried when he entered 525 East 88th Street was wrapped in blue paper on which appeared a white snow man design. We cannot say that such a resolution of this evidential

variance would be unreasonable; therefore we should not replace it with our own. This is not a case in which two segments of the Government's proof were absolutely essential to support a conviction and each contradicts the other. United States v. Moret, 334 F.2d 887, 893 (2 Cir. 1964) (Waterman, J., dissenting), cert. denied, 379 U.S. 993, 85 S.Ct. 707, 13 L.Ed.2d 612 (1965). Rather, here there was a conflict in the Government's proof tending to establish only one fact among many facts that together tended to prove Struzzieri was carrying the package that contained the heroin subsequently sold to Giorgio. Undeniably the variance as to the color of the wrapping paper weakened the Government's case against Struzzieri. Nevertheless, the jury concluded the package that Giorgio received from Monastersky and McGovern was the package Struzzieri brought to the latter pair earlier in the evening. We should not disturb this permissible resolution of the variance since this is precisely the sort of task that juries are best able to perform. United States v. Dardi, supra; United States v. Tutino, 269 F.2d 488 (2 Cir. 1959).

Struzzieri also contends the Government's case tending to involve him in this January 6 transaction was fatally weak because Agent Ward's testimony that he observed Struzzieri enter 525 East 88th Street carrying a package wrapped in blue paper on which appeared a white snow man design was incredible and unworthy of belief because of the distance separating Ward from Struzzieri and the poor lighting conditions at that time. In other words, Struzzieri's claim is not that the Government failed to present evidence from which reasonable men could be convinced of a certain fact beyond a reasonable doubt; rather he claims that the physical facts so contradict Ward's testimony as to render that testimony unbelievable. We disagree. Deciding whether certain evidence should be believed is precisely the task set the jury in a prosecution such as this; we should not interfere with the

jury's decision in this case that Ward's testimony was credible.

We next turn to consider whether the Government's evidence relating to the January 13 transaction in which all of the defendants were allegedly involved was sufficient to permit the cases against any or all of them to be submitted to the jury. Again, the case against Monastersky, Struzzieri and Bentvena was based almost entirely on the trial testimony of several narcotics agents, and it, too, can be briefly summarized. Agent Giorgio made arrangements with Monastersky to purchase another half kilogram of heroin on January 13 from Monastersky and McGovern for $6,000. On that date, at about 9:25 P.M. Bentvena and Struzzieri arrived in a car on East 88th Street; they parked and entered the apartment building numbered 525. Shortly thereafter Monastersky came out of this building and met Agent Giorgio who had been waiting in the immediate vicinity for some time. Giorgio introduced Agent Mangiaracina to Monastersky as his partner and while Mangiaracina waited in the lobby of the building Monastersky and Giorgio made their way to apartment 2-H, which was McGovern's apartment. While doing so they met Struzzieri and Bentvena coming toward them in the opposite direction. When Bentvena and Struzzieri arrived in the lobby Mangiaracina observed Bentvena stop and speak into the intercom system; at approximately the same time Giorgio observed McGovern go to the intercom connection in apartment 2-H and speak into it, saying, "Everything is okay." Mangiaracina then saw Struzzieri leave the building, while agents outside saw them walk to their car, remove a brown package from the trunk, and together return to the lobby where Mangiaracina saw them go upstairs again. Shortly thereafter, according to Giorgio, the doorbell rang in apartment 2-H, McGovern answered the bell and returned with a brown package ultimately found to contain heroin. Bentvena and Struzzieri were observed leaving the building a few minutes after their last entry. In the meantime, McGovern had asked Giorgio for the money. Giorgio summoned Mangiaracina, his supposed partner, from the lobby, the agents handed an envelope containing $6,000 to Monastersky, and Monastersky handed the package of heroin to Giorgio. Subsequently Struzzieri and Bentvena returned to 525 East 88th Street, where they remained for about an hour.

Considerations similar to those that caused us to affirm the jury's verdict of guilty based on the evidence relating to the January 6 sale cause us to hold that the evidence introduced by the Government relating to the January 13 sale was sufficient to support the jury's verdict of guilty as to the latter transaction. Viewing the evidence, as we must, in the light most favorable to the Government, United States v. Tutino, supra, and recognizing that involvement in an illegal sale of narcotics may be proved by circumstantial evidence, United States v. Moret, supra, we cannot say that reasonable jurors could not have found beyond a reasonable doubt that Struzzieri and Bentvena delivered the heroin to Monastersky and McGovern which they, in turn, sold and delivered to Giorgio. And, of course, Monastersky's involvement in the transaction is firmly established.

## II.

We now examine the claim of appellant Monastersky that his conviction on both counts should be reversed because, as the record does not show that the heroin sold to the agents was illegally imported, or that Monastersky knew from where it came, his conviction can only stand if the Government proved he had "possession" of the drugs,[4] which, he maintains, the Government failed to do. Monastersky contends the Government's proof establishes only that he was a "casual facilitator" of the sales in question, in other words that he merely introduced a willing seller to a willing buyer, activity that we held was insufficient to establish possession, either actual or con-

---

4. See note 3, supra.

structive, in United States v. Jones, 308 F.2d 26 (2 Cir. 1962). We disagree with appellant. We believe the evidence in this case established that Monastersky had, on both occasions, power to control the disposition of the heroin sufficient to constitute "possession" within 21 U.S.C. § 174. See United States v. Jones, supra. In *Jones* we reversed a conviction under § 174 that equated mere participation in a sale of narcotics with "possession" of the narcotic drug. In discussing the facts of that case we said:

> We believe the evidence in this case negates a conclusion that defendant Jones had dominion and control over the narcotics handed to Brown by Moore. The pains Jones took in the first instance to find Moore indicate that Jones was unable to consummate the transaction as a business dealing of his. The price and place of delivery were not even discussed with the would-be purchaser until defendant spoke with Moore. No one can say that Jones established these essential details of the affair unless he engages in speculation wholly unwarranted by the trial record. After consummation of the transaction Moore told agent Brown to purchase directly from him in the future and not to deal with anyone else. This statement by Moore negates a finding that Jones could assure, as a matter of course, delivery by Brown to a customer Jones might discover. 308 F.2d at 31.

The facts here are quite different. On both January 6 and January 13 Monastersky apparently set the price of the heroin without consulting with McGovern. On January 6 Monastersky was in the building when Struzzieri delivered the heroin. At both sales to Giorgio, Monastersky remained with McGovern throughout. And during the January 13 transaction Monastersky had the heroin package in his hands, Giorgio paid the money directly to Monastersky, and Monastersky handed the heroin directly to Giorgio. This evidence brings Monastersky's case well within our statement in *Jones* that "evidence showing that a given defendant set the price for a batch of narcotics, had the final say as to means of transfer, or was able to assure delivery, may well be sufficient to charge the defendant with a constructive possession of the narcotics * * *." 308 F.2d at 31.

 Monastersky also contends that the trial court's charge relating to constructive possession was improper. We would be hard pressed to detect error in this charge. In any event, since Monastersky failed to object to the charge at trial, or to request a different charge, he may not, barring special circumstances not present here, raise the issue on appeal. See United States v. Indiviglio, 352 F.2d 276 (2 Cir. 1965), cert. denied, Feb. 21, 1966, 86 S.Ct. 887.

Affirmed.