**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Walter DILLARD, Jr., Defendant-Appellant.**

**No. 15670.**

United States Court of Appeals Seventh Circuit.

April 17, 1967.

Robert S. Bailey, LeFevour & Bailey, Oak Park, Ill., for appellant.

Edward V. Hanrahan, U. S. Atty., Gerald M. Werksman, Asst. U. S. Atty., Chicago, Ill., John Peter Lulinski, Asst. U. S. Atty., of counsel, for appellee.

Before SCHNACKENBERG, KILEY and FAIRCHILD, Circuit Judges.

FAIRCHILD, Circuit Judge.

Defendant Walter Dillard, Jr. was convicted of a violation of 26 U.S.C.A. § 4704 (a). That statute declares that it "shall be unlawful for any person to purchase, sell, dispense, or distribute narcotic drugs except in the original stamped package or from the original stamped package. * * *" The stamps referred to evidence payment of a federal tax.[1] Penalties are provided in 26 U.S.C.A. § 7237(a).

The proof clearly established that one Johnson possessed five tinfoil packets which contained heroin and which did not bear stamps, and that Johnson sold them to federal narcotics agent Gibson. The sale took place in an automobile in the presence of defendant Dillard and an informant, Morgan. In effecting the transaction, Gibson handed $150 to Morgan, who turned it over to Johnson. Johnson later handed the packets of narcotics to Morgan, who handed them to Gibson. Dillard did not have them in his hands.

The question whether the evidence supports conviction of Dillard depends upon his relationship to Johnson with respect to the sale.

If Dillard can be said to have had constructive possession of the packages of heroin, such possession would support the conviction by virtue of a provision in § 4704 (a), "* * * the absence of appropriate taxpaid stamps from narcotic drugs shall be prima facie evidence of a violation of this subsection by the person in whose possession the same may be found."

If Dillard did not have at least constructive possession of the heroin, the statutory presumption would not be available as to him, and the questions would be: (1) was it proved that he aided and abetted Johnson in making the sale, and (2) was it proved that the sale was not "from the original stamped package"? It had, of course, been clearly shown that the sale was not "in the original stamped package."

The facts are related in the light most favorable to support the verdict: The informant Morgan guided the agent Gibson to Dillard's home and introduced Gibson to Dillard. Gibson said he was interested in purchasing a spoon of heroin. Dillard said he was sure that he could handle it if he could locate his connection, and quoted a price of $150 for a spoon. At Dillard's request, Gibson drove him to a certain location, where Dillard entered a telephone booth, and then reported that his connection was not at home, but he would try later. A little later they returned to the same area, and Dillard entered a restaurant. After a few minutes he came out and told Gibson he had spoken with his connection and the connection told him he could not make up (prepare the package for delivery) for another hour. An hour later they returned; Dillard met Johnson outside the restaurant and brought him to Gibson's car.

At Johnson's request, Gibson drove to another location. Gibson, Morgan, Johnson and Dillard were in the car. Johnson said he had already talked with Dil-

1. 26 U.S.C.A. §§ 4701, 4771.

lard and was "aware of the arrangements that had been made for this purchase—such as, I [Gibson] wanted a spoon of heroin and I was willing to pay $150 for the spoon." At Johnson's direction, Gibson gave the money to Morgan and Morgan gave it to Johnson. Johnson said it would take him a few minutes to pick up the heroin. He left the car for a few minutes. After returning, he passed the five packets to Morgan, who passed them to Gibson. "Mr. Johnson stated that the packages were five $30 packages because he wrapped his heroin in smaller packages of $30 each because it was easier for him to sell."

Johnson asked Gibson to drive back to Dillard's residence. Before leaving the car Johnson said "that if, at any time, I [Gibson] would like to get an additional purchase, I could get in touch with either him or Mr. Dillard, because Mr. Dillard and him was in partners." Johnson and Dillard left the car and entered the Dillard home.

As has been pointed out, § 4704(a) provides for a presumptive inference. The absence of appropriate taxpaid stamps from narcotic drugs is prima facie evidence of a violation by one in whose "possession" the same may be found. A somewhat similar presumption is provided for by 21 U.S.C.A. § 174. The offenses described there consist of various transactions with respect to narcotic drugs when one knows "the same to have been imported or brought into the United States contrary to law" and a defendant's possession of the narcotic drug "shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury."

■ Under these sections, the inference and presumption arise not only where defendant is proved to have had immediate physical possession of the narcotic drug, but also where he has been shown to have dominion or control over it, though in the hands of another. In the latter case he is said to have constructive possession.[2] Aside from actual possession, and actual possession of an agent imputed to his principal, "a person who is sufficiently associated with the persons having physical custody so that he is able, without difficulty, to cause the drug to be produced for a customer can also be found by a jury to have dominion and control over the drug, and therefore possession." [3]

Dillard's testimony would support the view that he was an addict who knew of Johnson as a possible seller, and hunted him up for the prospective buyer partly out of a desire to be helpful and partly with the hope that Johnson might reward him with a "fix," a hope which he said was not fulfilled. Other testimony, already referred to, would support the view that Dillard was in a position to make the sale, for delivery by Johnson. According to Gibson, Dillard was sure he could "handle it" if he could locate Johnson, and quoted the price. Johnson learned of the terms of the sale from Dillard, made the sale in Dillard's presence, and indicated that further purchases could be made by getting in touch with Dillard, whom he acknowledged as a partner. After the sale the two men went together into Dillard's home.

■ We conclude that the jury, accepting the latter view, could decide that Dillard had an association with Johnson which gave him power to produce the drugs for a customer, and hence possession of the drugs without taxpaid stamps.

2. United States v. Jones (2d Cir. 1962), 308 F.2d 26, 30; United States v. Hernandez (2d Cir. 1961), 290 F.2d 86, 90; Lucero v. United States (10th Cir. 1962), 311 F.2d 457, 459, cert. den. 372 U.S. 936, 83 S.Ct. 883, 9 L.Ed.2d 767 (1963); United States v. Malfi (3d Cir. 1959), 264 F.2d 147, 151, cert. den. 361 U.S. 817, 80 S.Ct. 57, 4 L.Ed.2d 63 (1959); United

States v. Mills (3d Cir. 1961), 293 F.2d 609, 611; United States v. Maroy (7th Cir. 1957), 248 F.2d 663, 666, cert. den. 355 U.S. 931, 78 S.Ct. 412, 2 L.Ed.2d 414 (1958); Walker v. United States (5th Cir. 1962), 301 F.2d 94, 96.

3. United States v. Hernandez, supra, note 2, 290 F.2d at 90; United States v. Jones, supra, note 2, 308 F.2d at 30.

Having so decided, the jury was warranted in finding him guilty.

It seems to us, moreover, that a different analysis could properly lead to a guilty verdict, without reliance upon the statutory presumption arising from constructive possession.

■ The offense described in 26 U.S.C.A. § 4704(a), unlike that described in 21 U.S.C.A. § 174, does not include a particular state of mind as an element of the offense. Any sale of narcotic drugs is a violation of § 4704(a) unless the drugs are sold in the original stamped package or sold from the original stamped package. There can be no question but that the drug sold to Gibson was not in the original stamped package. The question whether it was a sale from the original stamped package depends upon the construction of the statutory language.

It was doubtless the intention of Congress to require narcotic drugs to remain in the original stamped package at all times until it becomes necessary to remove the contents in order to make legitimate sales or uses of them. The words "sell * * * from the original stamped package" should be reasonably construed in the light of that intent. Not every sale of a drug which has once been part of a stamped package is a sale "from the original stamped package." Whether the sale is of a type consistent with the breaking of a package for legitimate use is an important consideration.

■ It is possible, so far as the evidence shows, that Johnson may have had access to an original stamped package of narcotic drugs, and that the drugs he sold had been part of its contents. So assuming, would the sale described in the evidence be a sale "from the original

stamped package"? This was a furtive sale and delivery; there was nothing to suggest that the packets were in a form ordinarily used to facilitate legitimate sale, dispensing, or distribution of drugs, and, indeed, Johnson explained that the drug was wrapped as it was because it was easier to sell smaller packages than larger ones. In our view the sale described here could properly be found not to be of the type intended by the language, "sell * * * from the original stamped package."

One who aids or abets the commission of an offense is punishable as a principal.[4] It does not matter that defendant was not indicted in terms of aiding and abetting.[5] In Nye & Nissen v. United States,[6] the Supreme Court stated the applicable test:

> "In order to aid and abet another to commit a crime it is necessary that a defendant 'in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed.' "[7]

It follows from what has been said about the relationship between Dillard and Johnson that even without reliance on the statutory presumption the jury could find that Dillard aided and abetted the sale, and find him guilty as it did.

The judgment appealed from is

Affirmed.

SCHNACKENBERG, Circuit Judge, concurs in the conclusion that the record supports a finding that defendant had constructive possession of the drugs but considers it unnecessary to pass upon the question whether the record would support the verdict without reliance upon the statutory presumption.

---

4.  18 U.S.C.A. § 2(a).

5.  United States v. Shaffer (7th Cir. 1961), 291 F.2d 689, 693, cert. den. 368 U.S. 914, 82 S.Ct. 193, 7 L.Ed.2d 130 (1961).

6.  (1949), 336 U.S. 613, 69 S.Ct. 766, 93 L. Ed. 919.

7.  Id. at 619, 69 S.Ct. at 769.