**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Rene Delgado BARNETT, Defendant-**
**Appellant.**

**No. 71–2210.**

United States Court of Appeals,
Ninth Circuit.

Nov. 8, 1972.

---◆---

Rubin Salter, Jr. (argued), Tucson, Ariz., for defendant-appellant.

James Whitney, Asst. U. S. Atty. (argued), Richard K. Burke, U. S. Atty., Tucson, Ariz., for plaintiff-appellee.

Before DUNIWAY and ELY, Circuit Judges, and BYRNE, District Judge.*

ELY, Circuit Judge:

Barnett was convicted, by a jury, of having twice participated in sales of illegally imported heroin, both acts being violations of 21 U.S.C. § 174. He now appeals, raising several possible grounds for reversal. We need consider only one, however, for he correctly argues that the evidence was insufficient to support his conviction on either count. On that basis, we reverse.

The first sale Barnett was convicted of having participated in occurred on March 16, 1971. On that date, Eli Madrid of the Federal Bureau of Narcotics went to the home of one De Garfio in Tucson, Arizona.[1] The purpose of the visit was twofold. Madrid wanted to purchase a small sample of heroin and to make arrangements for a subsequent, larger purchase of the same drug. As a result, much of what transpired on the 16th related only to the subsequent, larger sale and not to the sale on the

---

* Honorable William Matthew Byrne, Jr., United States District Judge, Los Angeles, California, sitting by designation.

1. Madrid had gone to De Garfio's home the day before. He had, however, not seen De Garfio. Rather, he had talked with Barnett and De Garfio's niece whom he knew. She had previously sold him an ounce of heroin. He had not previously seen Barnett. During that conversation, Barnett indicated some familiarity with the drug traffic conducted by De Garfio.

He did not, however, say anything to indicate that he was anything more than a knowledgeable bystander. Barnett indicated only (1) some general knowledge about the prior heroin transaction between Madrid and the niece, and (2) an interest in the type of drugs Madrid might desire to purchase in the future. Nothing that transpired on the 15th could support a conviction on either count. *See* United States v. Camarillo, 431 F.2d 616 (9th Cir. 1970); Hill v. United States, 379 F.2d 811, 814 (9th Cir. 1967).

16th. In fact, there was very little evidence regarding that first sale; moreover, only a miniscule part of it related to Barnett. Agent Madrid testified that "the first thing [he and De Garfio] got straightened out," "[r]ight when [he] first got in there," was the sale of the sample.[2] At that time, Barnett was only listening to the negotiations between Madrid and De Garfio; he had not yet entered the conversation.

The only actions attributed to Barnett during the sale of the sample were that he had opened the door to admit Madrid when Madrid arrived at De Garfio's house and that he had laughed briefly at something Madrid said when the money and the heroin were exchanged between Madrid and De Garfio. Specifically, Barnett, and the others in the room, had laughed when Madrid stated that he was not, on that occasion, attempting, as he had in the past, to cheat De Garfio out of a portion of the agreed purchase price. Barnett's presence and his laughter, even when coupled with his actions on the 15th are insufficient to support his conviction on this count. *See* United States v. Camarillo, 431 F.2d 616 (9th Cir. 1970); Hill v. United States, 379 F.2d 811 (9th Cir. 1967); United States v. Jones, 308 F.2d 26 (2d Cir. 1962). The evidence falls short of establishing that Barnett either facilitated the sale or aided or abetted De Garfio in the commission of the illegal transaction.

There was more evidence concerning Barnett's role in the second sale, the basis of the other charge, which culminated in the transfer on the 24th. The bulk of it related to his alleged part in the negotiations on the 16th, when he acted, in a limited capacity, as a translater between Madrid and De Garfio. Secondly, at one point during the negotiations he made a brief statement regarding the degree of risk to which he and others living in De Garfio's house were exposed and how that exposure meant that the sellers should have the main responsibility for planning the actual transfer of the drugs.[3] Thirdly, at De Garfio's instruction, Barnett gave Madrid a slip of paper with Barnett's telephone number on it. It was tentatively planned that, when he had raised the purchase price, Madrid would call Barnett and inform him that he was ready to buy.[4] Finally, during the negotiations, Barnett made a number of exclamations generally approving of the plans drawn by De Garfio and Madrid.[5]

In addition to the foregoing evidence concerning the events of the 16th, there was evidence as to Barnett's actions on the 24th. Madrid testified that Barnett (1) listened, from an adjoining room, to a brief conversation between De Garfio and Madrid, and (2) escorted Madrid and De Garfio's niece outside to Madrid's car to get the money owed for the heroin. Before any money was paid, however, Barnett, De Garfio, and the others present were arrested by agents accompanying Madrid.

As we view this evidence, it is, even when analyzed in the light most favorable to the Government, deficient in two critical respects. First, it is devoid of anything which would reasonably support a belief that Barnett ever had either actual or constructive possession of the heroin. There was no suggestion that he had ever had actual possession; the only question is whether he constructively

---

2. The negotiations over the sample took place at the beginning of the meeting. The actual transfer of the money and the narcotics occurred later.

3. According to Madrid, Barnett said:
   "[I]f we [are] going to do this [transaction], . . . we [are] going to have to do it [our] way because [we are] going to be in danger, [we are] the ones who [are] going to have the heroin in the house. . . ."

4. Ultimately, that plan was rejected in favor of one in which De Garfio would call Madrid when she had successfully obtained the heroin. *Madrid never called Barnett at the number he had been given.*

5. Madrid testified that Barnett said things such as, "Yeah, do that. That sounds good."

had dominion and control. The test in our Circuit was first established in Hill v. United States, *supra*. Therein, we adopted the rule formulated by the Second Circuit in United States v. Jones, *supra,* that a finding of possession turns upon whether

> "One [has] a working relationship or a sufficient association with those having physical custody of the drugs so as to enable him to assure their production, without difficulty, to a customer. . . . But a casual facilitator 'of a sale, who knows a given principal possesses and trades in narcotics but who lacks the working relationship with that principal that enables an assurance of delivery, may not be held to have dominion and control over the drug and cannot be said to have possession of it."

Hill v. United States, *supra* at 814, quoting United States v. Jones, *supra.*[6] Nothing Barnett did, at any time, indicates to us that he in any way controlled the disposition of the heroin. From the evidence on the record, it is obvious that De Garfio, alone, had control. Barnett, therefore, did not have possession.

The second deficiency in the prosecution's proof follows from our conclusion that Barnett was not in possession of the heroin. The effect of such a determination is that the presumption in 21 U.S.C. § 174 [7] cannot be applied as against him.[8] Rather, the Government must affirmatively demonstrate that Barnett knew that the heroin was illegally imported. *See* United States v. Jones, *supra;* Hernandez v. United States, 300 F.2d 114 (9th Cir. 1962). This it failed to do.

The judgment of conviction is vacated, and the cause is remanded to the District Court with instructions to dismiss the indictment.

Reversed and remanded, with directions.

---

6. The only possible distinction between *Hill* and *Jones* and this case is a slight difference in the relationship between the principal and the defendant. In those cases, the defendants brought buyers to their principal in return for a share of the profits. *See* 379 F.2d at 812; 308 F. 2d at 29. Here, Barnett had no prior connection with the buyers. Instead, he provided some services, on the same order of importance as those provided by Hill and Jones, to De Garfio, in whose home he was residing. The type of services rendered to the seller is, we think, of no significance here *except* insofar as the services relate to the issue of possession.

7. In pertinent part, that section provides:

> "Whenever on trial for a violation of this section the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction, unless the defendant explains the possession to the satisfaction of the jury."

8. The trial judge instructed the jury that it might apply the presumption to Barnett.