**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Leo SHAFFER et al., Defendants-**
**Appellants.**

**Nos. 12862–12867.**

United States Court of Appeals
Seventh Circuit.

June 13, 1961.

Rehearing Denied Aug. 2, 1961.

Richard E. Gorman, Myer H. Gladstone, Chicago, Ill., Morris A. Shenker, St. Louis, Mo., Daniel W. Davies, Newport, Ky., Sidney M. Glazer, Murry L. Randall, St. Louis, Mo., for appellants Philip Share, Irwin Gordon and James Tamer.

Don A. Tabbert, U. S. Atty., Indianapolis, Ind., Henry T. Nicholas, Office of Regional Counsel Internal Revenue Service, Cincinnati, Ohio, for appellee.

Before SCHNACKENBERG, CASTLE, and MAJOR, Circuit Judges.

CASTLE, Circuit Judge.

Defendants-appellants, Leo Shaffer, Philip Share, Irwin Gordon, James Tamer, Jules Horwick and Edgar M. Wyatt were convicted on all counts of a five count indictment. Each was sentenced to concurrent four year terms on the first four counts, to a one year consecutive term on Count V, and was fined $10,000 on Count I, $10,000 on Count II and $5,000 on Count V, making a total of five years imprisonment and $25,000 in fines.[1]

---

1. Joseph Jacobson and Charles L. Sumner were also named as defendants and convicted. Their prison sentences were suspended and they did not appeal.

Count I of the indictment charges that defendants engaged in the business of accepting wagers as co-partners in a wagering syndicate at Terre Haute, Indiana, and in violation of 18 U.S.C.A. § 371 conspired to wilfully attempt to evade and defeat a large part of the excise tax on wagers due and owing under Section 4401 of the Internal Revenue Code of 1954 for the months of September, October and November, 1957. Count II charges that defendants as co-partners in a wagering syndicate wilfully and knowingly attempted to evade and defeat the excise tax due on wagers totalling $326,315.20, accepted in the month of September, 1957, in violation of 26 U.S.C.A. § 7201. Counts III and IV charge identical violations pertaining to wagers accepted in November and December 1957 totalling $1,305,260.80 and $1,631,576 respectively. Count V charges that the defendants were engaged in the business of accepting wagers as co-partners of a wagering syndicate during the aforementioned period and that they violated 26 U.S.C.A. § 7203 by wilfully and knowingly failing to register as required by Section 4412 of the Internal Revenue Code of 1954.

Defendants in their appeals assert numerous errors which may be summarized as presenting the following basic contested issues:

(1) Whether or not the defendants were tried by a fair and impartial jury.

(2) Whether or not there was substantial evidence sufficient to sustain the convictions of the defendants.

(3) Whether or not there was a variance between the indictment and the case as it was submitted to the jury under the instructions.

(4) Whether or not there was prejudicial and reversible error in the admission of evidence or in instructing the jury.

(5) Whether or not prejudicial and reversible error resulted from the government's calling of witnesses who invoked the Fifth Amendment.

(6) Whether or not the sentence imposed on each defendant under Count V of the indictment is excessive.

█ On the issue of whether there is substantial evidence to support the convictions we must view the evidence in the light most favorable to the government. It is not for us to weigh the evidence nor reject inferences properly deducible therefrom. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680; United States v. Coduto, 7 Cir., 284 F.2d 464, certiorari denied 365 U.S. 881, 81 S.Ct. 1027, 6 L.Ed.2d 192; United States v. Pinna, 7 Cir., 229 F.2d 216. With that rule in mind, we shall briefly refer to the facts and circumstances as developed by the proof.

From about the middle of September until November 30, 1957 a wager accepting business was conducted by telephone from a third-floor room in Terre Haute, Indiana, accessible from a street level entrance designated as 671½ Wabash Avenue. Most of the wagering was on the scores of college and professional football games. The bets were in sizable amounts, many ranging from $1,000 to $10,000, and totaled over three million dollars. The wagers were with bettors scattered throughout the United States from coast to coast and were received by long distance telephone calls.

In August of 1957 defendant Edgar M. Wyatt, a resident of Terre Haute, rented the room for a term of four months commencing September 1, arranged for the installation of eight telephones operating in banks of four with one unlisted number assigned to each bank, and for the receipt of sports wire service. He deposited $5,000 to cover estimated long distance tolls for a thirty day period and paid in advance for fifteen days' billing on the wire service.

About the middle of September the other defendants arrived in Terre Haute from various other cities. Shaffer, Jacobson, and Tamer checked in simultaneously at a local hotel where Wyatt had previously reserved a suite of adjoining

rooms for them. Horwick registered at a nearby hotel but a few days later removed to the hotel where the others were staying and occupied a room close to the suite. Share and Gordon arrived about a week later and Sumner shortly thereafter. Sumner was assigned to the suite occupied by Shaffer and Jacobson. The hotel was about two hundred feet from the entrance at 671½ Wabash Avenue.

All of the defendants were observed frequently in a restaurant adjacent to the entrance to the room and during periods when the latter premises was under surveillance were observed entering at various times in the morning, each using his own key to open the street level door which was always kept locked. The defendants usually left the premises together each evening. During the two and one-half month period involved over five thousand long distance telephone charges were made to the telephones.

More than fifty witnesses testified to placing bets by telephone on calls to the two unlisted numbers assigned to the telephones. Some asked for one of the individual defendants when they called, others placed their bets with whoever answered the phone or with someone to whom the defendant called transferred the call. In a number of instances bettors who had lost were instructed to remit the cash by registered mail to E. M. Wyatt or E. M. Wyatt & Company although they knew neither and had placed their bet with one of the defendants other than Wyatt. One bettor on inquiring whether he was betting with defendant Shaffer was informed "Yes, with his company".

On November 29, 1957 the room was entered pursuant to a search warrant at approximately 1:30 P. M. Horwick was leaving the premises. The remaining defendants, except Tamer, were in the room, three engaged in telephone conversations. Among other items, a record of bettor accounts receivable and payable was found on the premises. It reflects the net amount due from or payable to each bettor. There is no indication that the amount is due to or payable by any particular one of the defendants. Also found were betting slips recording wagers in the handwriting of all six defendants and schedules on which a running balance of the gross amount wagered on each game yet to be played was recorded. These amounts were identical with the total of the betting slips on the particular game. Where a game had been played there was an entry of the net gain or loss on that game.

None of the defendants had filed the special tax return and application for registry-wagering or a monthly excise tax return, as partners or members of any group or syndicate. With the exception of Wyatt, none of the defendants registered as being engaged in the business of accepting wagers during the period in question. In August of 1957 Wyatt had withdrawn from a partnership, known as the Clover Club, engaged in the business of accepting wagers at Terre Haute. He had previously signed and filed the special tax returns and applications for registry-wagering on behalf of that partnership which listed and identified the partners as required by law and pertinent Treasury Regulation. On September 12, 1957 Wyatt filed a special tax return and application for registry-wagering at 671½ Wabash Avenue listing himself as the owner and stating he was in the business of accepting wagers on his own account. He filed monthly excise tax returns for the months of September, October and November, 1957. They were signed "E. M. Wyatt, owner" and in the aggregate covered the tax due on wagers in the amount of $5625.

■ We have not attempted to set forth the evidence in detail but from a careful study of the record we are convinced that there was ample and substantial basis for the jury to conclude that the defendants conspired to utilize the registration and the monthly tax returns of Wyatt as a front to mask the magnitude of the wagering operation they actually conducted with the plan and design of evading the substantial tax actually due.

The defendants' contention that the evidence does not support a conclusion that the operation conducted at 671½ Wabash Avenue was a partnership[2] or syndicate operation is without merit.

The defendants complain of certain of the court's instructions asserting that they are confusing and repugnant. Much of defendants' argument in this respect is directed to features which were not made the basis of objections presented to the trial court and which arise only if the specific language is isolated and considered out of context. We have examined the instructions and it is our opinion that when considered in their entirety they contain no reversible error. In fact their detail evidences the exercise of meticulous care in informing the jury of the extent of the government's burden under the indictment. And the instruction given on guilt as an aider or abettor correctly states the law. The District Court did not err in giving that instruction nor the instructions it gave on conspiracy.

■■ There is no evidence here that the acts of concealment were for the purpose of concealing prior criminal acts and the instructions tendered on such theory were properly refused. United States v. Clancy, 7 Cir., 276 F.2d 617.[3] Nor was there a basis for the lesser included offense instructions requested by defendants. Here it was possible to have committed the greater offense charged without having committed the lesser (evasion of the occupational tax on wagering in violation of 26 U.S.C.A. § 7262). The instructions were properly refused. Cf. James v. United States, 9 Cir., 238 F. 2d 681, 16 Alaska 513; Rule 31(c), Federal Rules of Criminal Procedure, 18 U.S. C.A.

■ Defendants claim there is a variance between the indictment and the instructions under which the case was submitted to the jury. It is argued that a fatal variance resulted from the instructions permitting conviction of all defendants if any two or more were members of the specific partnership charged in the indictment and the remaining defendants were aiders and abettors. We do not agree. The elimination of one or more of the defendants as a member of the wagering syndicate does not eliminate the existence of the syndicate. And it is not necessary that aiders and abettors be charged as such in the indictment. United States v. Monticello, 3 Cir., 264 F. 2d 47; Mays v. United States, 8 Cir., 261 F.2d 662. There was no variance and Stirone v. United States, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252, relied upon by defendants is without application.

Defendants' reliance upon Ingram v. United States, 360 U.S. 672, 79 S.Ct. 1314, 3 L.Ed.2d 1503, is misplaced. Ingram involved convictions of conspiracy to evade and defeat payment of the wagering excise tax but the convictions which were reversed were those of two employees without proprietary interest in the operation and the reversals were based on a lack of evidence of any knowledge of the employers' tax liability. Evidence of knowledge was not lacking in the instant case. Wyatt's occupational tax stamp was posted on the wall of the room.

■ The defendants contend that the District Court committed reversible error in the admission of testimony and exhibits concerning the previous partnership relationship of Wyatt in the Clover Club operation and the special tax returns and applications for registry-wagering executed and filed by him which listed the partners in that operation. At the time of its admission this evidence was limited to defendant Wyatt and it was admissible to show his knowledge of the wagering-registry requirements of the Internal Revenue Code.

---

**2.** 26 U.S.C.A. § 7701 defines "partnership" as including a "syndicate, group, pool, joint venture, or other unincorporated organization, through or by means of which any business, financial operation, or venture is carried on * * *."

**3.** Reversed on other grounds, 365 U.S. 312, 81 S.Ct. 645, 5 L.Ed.2d 574.

We perceive no error in this connection. Nor was it a basis for a mistrial or severance.

It is urged that the court erred in permitting a government witness, whose qualifications are not in dispute, to testify as to his computation of the gross amount of wagers reflected in the records found in the room. The hypothetical questions asked assumed that the wagering operation was a co-partnership otherwise their answers simply represented a computation of the amount of wagers from records in evidence. The court carefully instructed the jury that it was not to take for granted that the statements contained in the hypothetical questions are true but should carefully scrutinize the evidence to so determine and give no weight to opinions based on any material statement found not to be true. The court did not err in the admission of this testimony.

Defendants claim that the court erred in admitting into evidence, and in failing to strike, testimony that the defendants other than Wyatt failed to file excise tax returns. But this evidence clearly had a relevant and material bearing on the case. Evidence tending to negate that defendants were operating as individuals and not attempting to evade any tax due was admissible. And there is no merit to the contention that defendants' privilege against self-incrimination was violated by the admission of such testimony.

The joint motion of certain of the defendants to quash the search warrant and suppress evidence was properly overruled. An examination of the face of the warrant shows that it is completely adequate and states sufficient grounds for its issuance. And, contrary to defendants' contentions, the items seized at the time of the search and later admitted in evidence were all instrumentalities of the crime. The betting slips, schedules of gross amounts wagered on each game, record of accounts receivable and payable and other records were all items utilized in the continued operation of the venture and instrumentalities of the crime charged. United States v. Lefkowitz, 285 U.S. 452, 52 S.Ct. 420, 76 L.Ed. 877; Marron v. United States, 275 U.S. 192, 199, 48 S.Ct. 74, 72 L.Ed. 231; Merritt v. United States, 6 Cir., 249 F.2d 19.

During the trial the government called over sixty witnesses in corroboration of the betting records and toll slips. Nine of these invoked the Fifth Amendment. Six of the nine had claimed the privilege before the grand jury. The error, if any, in calling such witnesses is cured by the cautionary instruction given by the District Court. United States v. Magin, 7 Cir., 280 F.2d 74, 79.

Count V of the indictment charged a violation of 26 U.S.C.A. § 7203. The punishment imposed was within that authorized by that statute and on the record and under the circumstances here involved it was not excessive. United States v. Coduto, 7 Cir., 284 F.2d 464, 469, certiorari denied 365 U.S. 881, 81 S.Ct. 1027, 6 L.Ed.2d 192; United States v. Chicago Professional Schools, Inc., et al., 7 Cir., 290 F.2d 285, concurring opinion. Defendants' contention that Count V charges a violation of 26 U.S.C.A. § 7272 (which imposes "a penalty of $50") rather than of § 7203 is without substance.

Defendants assert that because of prejudicial newspaper, radio and television publicity occurring on the eve of the trial they were not afforded a trial by an impartial jury. The trial commenced on a Monday. The publicity in question occurred during the previous week-end. There is no question but what the material circulated through the press and other communication media contained statements prejudicial to the defendants, characterizing some as professional gamblers, others as ex-convicts, and containing representations of prior criminal activities and convictions. Although defendants contend that the pretrial publicity was generated at least in part by the government the record does

not support them in this contention in so far as any of the prejudicial material is concerned.

On the morning of the trial defendants filed a motion for an indefinite continuance followed by a motion that the case be transferred to another district, both of which were overruled. The District Court carefully interrogated each prospective juror on voir dire examination as to whether or not the newspaper articles, radio broadcasts or telecasts had come to his attention and requested the parties to submit any additional questions which either party felt should be propounded to the jurors. Defendants submitted none.

Of the twelve jurymen who tried the case, only five had heard of the case through the newspaper articles in question. Four of these could not recall what they had read in the articles. One just saw the headlines and did not recall the article itself. Each of the twelve jurors stated that he had formed no opinion as to the guilt or innocence of the defendants. None had any opinion concerning any of the facts of the case because of anything they had read or heard about it and all twelve stated that they would rely entirely upon the evidence to be heard in arriving at a verdict. Following the selection of the twelfth juror but before the jury was accepted or sworn the court gave the defendants an unlimited number of additional peremptory challenges. Defendants declined to exercise the unlimited additional peremptory challenges offered and accepted the entire jury panel, subject to their standing objection for cause. During the voir dire examination defendants had requested that all jurors who had heard of the case through the pre-trial publicity here in question be excused for cause.

Defendants rely heavily upon Marshall v. United States, 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250, as sustaining their contention that they were not afforded a trial by a fair and impartial jury and that the case should be reversed and a new trial awarded. In our opinion the defendants' refusal to exercise the peremptory challenges offered them precludes any application of Marshall. In Marshall the prejudicial newspaper articles were read by jurors during the trial of the case and there was no opportunity to secure others in their place. The record in this case does not establish that it was impossible to secure jurors who had not seen or heard the publicity in question. Seven of the jurors who tried the case had not and at the time defendants refused the additional peremptory challenges and accepted the jury forty veniremen had not yet been called or interrogated on voir dire examination. In Marshall it was recognized that the trial judge has a large discretion in ruling on the issue of prejudice resulting from the reading by jurors of news articles and that each case must turn on its special facts. On the record before us we find no reversible error on this issue.

We have considered all other issues raised by the defendants but find the arguments advanced in support thereof to be without merit. We have not made specific reference to many of the authorities cited and analyzed in the briefs but we have considered them and each of the arguments advanced by defendants in support of their position on the issues and discussed those issues we deemed necessary.

We conclude that the defendants were accorded a fair and impartial trial free from reversible error. Each of the judgments of the District Court is affirmed.

Affirmed.