UNITED STATES of America,. Plaintiff-Appellee,

v.

William Condon GRAHAM and Grace Cunningham Graham, Defendants-Appellants.

Nos. 15131, 15132, 15133.

United States Court of Appeals Sixth Circuit.

Dec. 30, 1963.

Don Moore, Jr., Chattanooga, Tenn., Moore & Wild, Chattanooga, Tenn., of counsel for defendants-appellants.

John H. Reddy, U. S. Atty., David E. Smith, Asst. U. S. Atty., Chattanooga, Tenn., for plaintiff-appellee.

Before WEICK and O'SULLIVAN, Circuit Judges, and McALLISTER, Senior Circuit Judge.

O'SULLIVAN, Circuit Judge.

In this opinion we dispose of three appeals which were heard together. In 15,131, William Condon Graham appeals from a judgment entered June 20, 1962, sentencing him to two years imprisonment upon his plea of nolo contendere to an indictment returned November 12, 1957. In such indictment, he was charged with the purchase, on or about October 27, 1957, of narcotics in violation of § 4704(a), Title 26 U.S.C.A. In 15,132, Graham appeals from a judgment, entered June 20, 1962, following his conviction by a jury of receiving and aiding in the importation of narcotics, and of conspiracy to commit such offences, (§§ 173, 174, Title 21 U.S.C.A.). These offences were alleged to have occurred during the months of August, September and October, 1961. For such violations, Graham was sentenced, as a second offender, to twelve years imprisonment on each of six counts of the indictment. The sentences were to run concurrently. In appeal 15,133, Grace Cunningham Graham, wife of defendant William Condon Graham, appeals from her conviction on two counts of the last mentioned indictment. She was sentenced to a five year prison term under each count, such terms to be served concurrently. One William R. Minnick was charged with narcotics offences in various counts of the same indictment under which the Grahams were convicted. He was convicted, but has not appealed. The appeal in 15,131 charges that the two year sentence involved was illegal because the nolo contendere plea was induced by a promise that he would not receive a prison sentence. In 15,132 and 15,133, the Grahams assert that they are entitled to a new trial because of prejudicial conduct by the District Attorney in presenting the case to the jury.

1. *Illegal sentence (No. 15,131)*

By indictment returned on November 12, 1957, William Condon Graham was charged with the illegal purchase of narcotics. He pleaded not guilty. In January of 1958, a trial ended in a jury disagreement. In April, 1958, a second trial resulted in his conviction. On appeal, this Court, by opinion announced on September 18, 1958, reversed the conviction and remanded the case for a new trial, Graham v. United States, 257 F.2d 724 (CA 6, 1958). We there said that the issue of guilt was a close one. The case came on for retrial assignment on November 9, 1959, but was passed indefinitely. On October 25, 1960, the defendant Graham came into court with his attorneys and the then district attorney. He withdrew his plea of not guilty and tendered a plea of nolo contendere which, with the recommendation of the district attorney, was accepted by the District Judge. A fair reading of the transcript of the colloquy and proceedings had preliminary to the acceptance of the plea makes it clear that the plea was the product of a "settlement" arrived at between Graham's attorneys and the district attorney, and that any required prison sentence would be suspended. Answering the District Judge's question as to whether Graham knew what was involved in entering the nolo contendere plea, Graham's counsel stated:

"I think so, Your Honor, we explained it to him in detail that this is not a plea of guilty, it is not admitting his guilt in this case at all * * * the plea is made so Your Honor can dispose of this case, and it is not a plea of guilty or an admission of his guilt. * * * "

The district attorney noted that two trials had been held, with a reversal of the one conviction that had been obtained. We construe his remarks as disclosing some doubts of defendant's guilt or, at least, doubts as to his ability to convict. At that time he stated to the District Judge:

"The fact that there was a hung jury and the fact that it had been tried twice and the Court of Appeals reversed it and remanded it for a new trial * * * justice would be met if the court would impose the minimum sentence provided by the statute and suspend the execution of that sentence and impose a fine of $2,500.00."

The District Judge advised that the legal consequences of a nolo contendere plea were the same as those which follow a plea of guilty. He then entered the judgment of conviction, sentencing Graham as follows:

"It is adjudged that the defendant is hereby committed * * * for imprisonment for a period of two years. * * *

"It is adjudged that said sentence be, and hereby is, suspended, and that the defendant pay a fine of Two Thousand Five Hundred ($2,500.-00) in lieu of costs, said fine to be paid within 60 days."

As discussed later, this sentence was defective for failure of the District Judge to fix a period of probation as a condition to suspending sentence. Following the entry of said judgment of October 25, 1960, defendant paid a total of $1,400.00 on the fine imposed. The matter thus remained until Graham was later charged with, and on June 14, 1962, convicted of, a subsequent narcotics offence. This conviction is involved in appeals 15,132 and 15,133. Following such successful prosecution, on June 18, 1962, the district attorney moved that the suspension of the two year sentence included in the nolo contendere "settlement" judgment of October 25, 1960, be revoked and that Graham be ordered imprisoned "for the remaining part of the original sentence." On June 20, 1962, at the same time that Graham was sentenced to twelve years imprisonment as a second offender in case No. 15,132, the District Judge granted the government's motion to revoke the suspension of sentence in the earlier case. He sentenced Graham to prison for two years, such sentence to be served concurrently with the longer sentence imposed for the second offence.

The legality or propriety of this action would be largely academic were it not for the fact that we are, by this opinion, reversing the conviction which resulted in the longer sentence.

■ There appears to be little question but that the October 25, 1960 suspension of the two year sentence, without putting the defendant on probation for a specified period, was not in accordance with the statute. Title 18 U. S.C.A. § 3651. Horton v. United States, 151 F.2d 406, 407 (CA 5, 1945). Cf. United States v. Murray, 275 U.S. 347, 48 S.Ct. 146, 72 L.Ed. 309. The suspension of the two year sentence did not constitute a final judgment and was a nullity. Ex parte United States, 242 U.S. 27, 37 S.Ct. 72, 61 L.Ed. 129; Miller v. Aderhold, 288 U.S. 206, 53 S.Ct. 325, 77 L.Ed. 703.

The existence of a defect in the 1960 suspension of sentence does not, however, permit the United States to use this fault to violate its agreement with the defendant. If the aforesaid "deal" was not a proper way to dispose of this long pending and uncertain litigation, the entire burden of its fault should not be visited upon the defendant.

The judgment of the District Court entered on June 20, 1962, (appeal No. 15,131) is vacated and the cause remanded for resentencing defendant Graham to conform to the understanding of the parties reached at the time of the October 25, 1960 sentencing,[1] or, at the option of the defendant, the judgment of conviction entered on October 25, 1960, shall be vacated and defendant allowed to withdraw his plea of nolo contendere and enter a plea of not guilty.

2. *Motions for new trial (Nos. 15,132, 15,133)*

We find it necessary to grant a new trial to defendants-appellants William Condon Graham and his wife, Grace Cunningham Graham, in the cases 15,-132 and 15,133. We do this reluctantly, aware that we are dealing with a narcotics case and that, unaffected by the improprieties committed by the District Attorney, a conscientious jury might have convicted these defendants of the charges in the indictment.

The government's case against the Grahams depended almost entirely upon the testimony of one Leland R. Green, who was identified in the indictment as a non-indicted co-conspirator. While we have in mind that in its effort to combat the narcotics traffic, the government must often rely on disreputable characters to discover and convict those engaged in such business, we feel it necessary for an understanding of our decision to briefly describe the background of this witness. Leland R. Green was 36 years old at the time of his testimony and his career up to then had included a bad conduct discharge from the U. S. Navy in 1946, a conviction in 1948 of conspiracy to commit blackmail, a sentence of two years for burglary in 1950, another burglary sentence of three years in 1952, a conviction for possessing burglary tools in 1955, and a prison sentence in 1957 for the illegal carrying of a pistol. At the time of the 1961 events here involved, Green was recovering from two bullet wounds from a 45 calibre pistol. The record does not provide us with the details of this gun play. On his return to Chattanooga from the last of his trips to Mexico to purchase narcotics, he shot his wife. Here again the record is unclear as to the reason or blame for this shooting. Green had worked for Graham at a Casa Rio Supper Club in or near Chattanooga.

The charged conspiracy had its beginning when one Alley, who was then under a narcotics charge, arranged an introduction of Green to the codefendant Minnick. Minnick is claimed to have invited Green to accompany him to Mexico to purchase narcotics and asked Green if he could find a purchaser for the narcotics if they obtained them. Green said that he talked with Graham, who is alleged to have indicated that he would

---

1. It would appear that to be a valid sentence there will need to be a period of probation fixed in connection with the suspension of such sentence.

buy the narcotics if they were brought back. There followed three trips to Mexico by Green, once with Minnick, once with his wife and once alone. He testified that he turned over to Graham the narcotics obtained on each trip. Green said that the last two trips were made at the direct request of Graham, and that he purchased narcotics with money supplied by Graham. Green's description of his Mexican trips had some bizarre aspects, but was sufficient, if believed, to warrant the jury's verdict convicting the defendants Graham and wife. The latter both denied any connection with the narcotics involved in Green's trips. The jury could have disbelieved the protestations of innocence by the Grahams. Suffice it to say that a sharp issue was made as to their guilt.

We discuss, then, the charged prejudicial conduct of the District Attorney. When defendant William Graham was on the stand, the district attorney pursued cross-examination which inferred that Graham's wife was a narcotics user.[2] Similar questioning was indulged in the cross-examination of Mrs. Graham. Notwithstanding the district attorney's veiled promise that there would, as rebuttal, be testimony to support the reference to a needle breaking incident, no testimony on the subject was offered.

Graham, testifying, was asked by his own counsel if he had ever been convicted of a felony. He replied, concerning the

case in which he had pleaded nolo contendere, (appeal No. 15,131) "Well, I don't actually know. I don't understand the last federal case. I don't understand whether it was a conviction, it was my understanding at the time that it wasn't, but talking with the agents coming back from over there they said it was."

With this background, the district attorney brought out the details of the indictment in the earlier case, and the plea of nolo contendere, by the following cross-examination:

"Q. You came into court in person and by attorney and having been convicted on your plea of nolo contendere of having purchased 469 one-half grain morphine sulfate tablets, not from the original stamped package, a violation of Federal 26, Section 4704, as charged in a one count indictment, and on that offence you were given what Mr. Graham, in the way of a penalty?"

\* \* \* \* \* \*

"Q. So you are now, as you sit in that chair, under a suspended sentence of two years for purchasing narcotics, isn't that right?"

The conclusion of the district attorney's exploration of the nolo contendere plea was the following:

"Q. Well, you were convicted of having purchased them?

"A. Yes, sir, I sure was. I agreed to whatever it was, I didn't come in and say I was guilty of it.

2. "Q. (By Mr. Reddy) You say you never gave Leland Green a shot of heroin at your home?
"A. That's exactly right.
"Q. Do you remember the occasion that Grace was taking some kind of a shot and passed out in the bathroom, when Green was there?
"A. No, sir, I sure don't remember that.
"Q. When she fell down and broke the syringe, part of the needle was left in her arm, do you remember that?
"A. No, sir, I do not remember it.
"Q. You don't remember asking Leland to help you get the broken part of the needle out of her arm?
"A. Leland Green has not been in my house. \* \* \*

"Q. Just answer the question.
"A. No. I mean, if I can't explain it, I'll say no. No.
"Mr. Duncan: If your Honor please, there hasn't been any testimony to that. Leland Green was on the stand and Leland Green didn't testify to anything like that.
"Mr. Reddy: It's cross-examination.
"Mr. Duncan: I know, but he didn't ask Leland Green anything. \* \* \*
"Mr. Reddy: *Did you ever hear of rebuttal, Mr. Duncan?*
"Mr. Duncan: Do you overrule the \* \* \*
"The Court: Yes, overruled. Let's proceed."

"District Attorney: Well, the Court will instruct the jury, I believe, that a nolo contendere plea is tantamount to a plea of guilty."

*No such instruction was given.*

Having made the foregoing record, the district attorney in his argument to the jury stated, in part, as follows:

"She (Grace Cunningham Graham) was not taking liver and iron, she was taking what Graham was buying for her, just like he takes it. What does he buy 400 and some half-grains for? 460 one-half grains of morphine back there a couple of years ago. To put it on the shelf to look at it? No."

\*　\*　\*　\*　\*　\*

"Mr. Green has got a record, and who else has got a record here? *Condon Graham has got a record. He sits there and tells you he doesn't know anything about this case, that former federal case. Is it a record for robbery? Is it a record for burglary? No, it's a record for dope, the very same offense that you ladies and gentlemen are called upon to consider here in this case.*

"I don't know about that, he says. He stands here under a suspended sentence today of two years, and a fine of $2,500.00, charged and convicted under the very same statute that he is standing before you on today. Yes, Green has got a record, but it is not a record of dope. He has been in trouble, he frankly tells you. We brought out his record, we're not trying to hide anything there. As I say, we don't pick Graham's associates, he picks them himself. And who does he associate with? Ex-convicts. Men with records like himself. Of course not dope records, but other kinds of records."

\*　\*　\*　\*　\*　\*

"Oh, we've been framed. Who said anything about being framed? Graham. Where did he get that word from? *The same place he got the record on dope from.*"

Except for defense counsel's objection to the cross-examination relating to the alleged breaking of a narcotics needle in Mrs. Graham's arm, all of the above went on without objection, motion for mistrial, or request for corrective instruction. Ordinarily, such want of objection or other request for action by the trial judge would foreclose a claim of error on appeal. Sikes v. United States, 279 F.2d 561 (CA 5, 1960); United States v. Miller, 316 F. 2d 81, 83, 84 (CA 6, 1963); 3 Am.Jur., "Appeal and Error" § 374. Likewise, where an accused discloses a former conviction, cross-examination developing its full circumstances will not be held prejudicial. Marin v. United States, 10 F.2d 271 (CA 6, 1926). We should further observe that the defendants Graham did not, in the District Court, move for a new trial on the grounds now under discussion. The District Judge, therefore, had no opportunity to consider them.

It is our view, however, that the trial events detailed above visited such substantial prejudice upon the appellants Graham that we must take notice of them as error under Rule 52(b) of the Federal Rules of Criminal Procedure. We have described the character of the only witness who in any way connected the appellants with criminal activity. Further, there was no evidence of any sale or distribution of narcotics by them. The prosecution's theory was that they were acquiring narcotics for their personal use. Its brief here asserts, "It was a part of the theory of the government that the heroin being illegally imported was for use by William Condon Graham and Grace Cunningham." It was to support this theory that the district attorney inferred that on an occasion witnessed by government's witness Green, Mrs. Graham had a needle containing the drug break off in her arm. Upon objection, he intimated that he would, by way of rebuttal, produce evidence to support his inference. He did not do so, although it is fair to assume

that the trial judge had in mind his promise of rebuttal when he overruled defense counsel's objection.

■■ The district attorney further buttressed his theory that the Grahams were drug addicts and had acquired the contraband for their own consumption, by his disclosure of the details of the earlier indictment and his insistence, by trial remarks and argument, that the nolo contendere plea was equivalent to a plea of guilty. It is true that a nolo contendere plea permits a judgment of conviction and the imposition of punishment the same as if a plea of guilty had been made, Hudson v. United States, 272 U.S. 451, 47 S.Ct. 127, 71 L.Ed. 347. However, it has been held that it is not admissible to aid proof of guilt in another proceeding. United States v. Lair, 195 F. 47, 52 (CA 8, 1912); Mickler v. Fahs, 243 F.2d 515, 517 (CA 5, 1957); Piassick v. United States, 253 F.2d 658, 661, (CA 5, 1958). Had the information of the former plea of nolo contendere been only once alluded to and come in without objection, it might be passed as being of slight importance. However, here the district attorney not only told the jury that such a plea was an admission of guilt and that the court would so instruct them, but went on to use the circumstances of the plea as the subject of extended and inflammatory argument. We should note here that contrary to the district attorney's admitted efforts to convince the jury that the narcotics involved in the former case were for the use of Graham and his wife,[3] the predecessor district attorney stated at the hearing at which the nolo contendere plea was entered, "At the other trial the government was of the opinion that this defendant (Graham) was a narcotic addict. * * * *We are now convinced that he was not an addict at the time.*"

■■ Our discussion of these matters of claimed prejudice may appear to be of undue length, but we think it important to make clear why we feel impelled to remand the case for a new trial. Any reasonable doubt of the Grahams' guilt might well have been removed from the jurors' minds by the inflammatory remarks of the district attorney. Prosecutors should be allowed zealous employment of all of the legitimate skills of advocacy. We think, however, the bounds of legitimacy were transgressed here.

■ The language of the Supreme Court in Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 88 L.Ed. 1314, 1321, aptly expresses our view:

"The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one."

■ Absence of proper objection to excessively zealous prosecution does not prevent our taking notice of the impropriety of such excesses. Viereck v. United States, 318 U.S. 236, 247–248, 63 S.Ct. 561, 87 L.Ed. 734, 741.

The judgment of conviction in appeals 15,132 and 15,133 is vacated and a new trial ordered.

---

3. "She (Grace Graham) was not taking liver and iron, she was taking what Graham was buying her, *just like he takes it.* What does he buy 400 and some half grains for? 460 one-half grains of morphine back there a couple of years ago. To put it on the shelf to look at it? No."