340 F.2d 1014
 65-1 USTC P 15,607
 UNITED STATES of America
v.
William SAMS, Appellant.
UNITED STATES of America
v.
Michael GIORANO, a/k/a Nick Jerome, Appellant.
UNITED STATES of America
v.
Frank PHILLIPS, Appellant.
UNITED STATES of America
v.
Thomas CIANCUTTI, Appellant.
 Nos. 14576-14579.
 United States Court of Appeals Third Circuit.
 Argued March 10, 1964.
Decided Jan. 13, 1965, Rehearing Denied Feb. 15, 1965,
Certiorari Denied April26, 1965, See 85 S.Ct. 1336.
 
 Vincent M. Casey, Pittsburgh, Pa., Margiotti & Casey, Pittsburgh, Pa., for William Sams, Michael Giorano, a/k/a Nick Jerome and Frank Phillips, appellants.
 Irving M. Green, New Kensington, Pa., for Thomas Ciancutti, appellant.
 Samuel J. Reich, Asst U.S. Atty., Pittsburgh, Pa., Gustave Diamond, U.S. Atty., Pittsburgh, Pa., for appellee.
 Before BIGGS, Chief Judge, and HASTIE and SMITH, Circuit Judges.
 WILLIAM F. SMITH, Circuit Judge.
 
 
 1
 The appellants Ciancutti, Sams and Phillips were tried and found guilty on each of several counts of an indictment charging violations of the Gambling Tax Act of 1954 as amended and the relevant sections of the Internal Revenue Code. Ciancutti and Sams were convicted of the failure, in each of two separate periods covered by different counts of the indictment, to pay the occupational tax imposed by 4411 of Title 26 U.S.C., in violation of 7262 of the same title, and the willful failure, in each of the same periods, to pay the same occupational taxes in violation of 7203 of the same title. Sams and Phillips were convicted of the willful attempt to defeat and evade a large part of the excise tax imposed by 4401 of Title 26 U.S.C., in violation of 7201 of the same title. Phillips was convicted also of knowingly making and filing, on March 2, 1961, and June 30, 1961, an application and return which he did not believe to be true and correct, in violation of 7206(1) of Title 26 U.S.C. All three were convicted of conspiracy to defraud the United States by impeding and obstructing the ascertainment, computation, assessment and collection of the taxes imposed by the cited sections, in violation of 371 of Title 18 U.S.C. The appellant Giorano was convicted on only one count charging the willful failure to pay the occupational tax. The present appeals are from the judgments entered on the verdicts.
 
 
 2
 The judgments are challenged as erroneous mainly on the ground that the evidence as to each appellant was insufficient to sustain his conviction on the respective counts of the indictment. In our consideration of the questions raised by this challenge we are required to review the evidence, together with all inferences reasonably and logically deducible therefrom, in the light most favorable to the government. United States v. Minker, 312 F.2d 632, 635 (3rd Cr. 1962), cert. den. 372 U.S. 953, 83 S.Ct. 952, 9 L.Ed.2d 978; United States v. Malfi, 264 F.2d 147, 148 (3rd Cir.1959), cert. den. 361 U.S. 817, 80 S.Ct. 57, 4 L.Ed.2d 63; United States v. Giuliano, 263 F.2d 582, 584 (3rd Cir.1959). We consider first the evidence as it relates to Ciancutti, Sams and Phillips.
 
 
 3
 During the period here in question, between the latter part of June 1960 and August 24, 1961, a gambling casino was in full operation in the Garibaldi Building, located at 1195 Fifth Avenue, New Kensington, Pennsylvania. The enterprise occupied the entire second floor of the premises, which was furnished and equipped as both a horse and gaming room. These facts are not disputed.
 
 
 4
 Ciancutti argues that the evidence as to him was insufficient to establish that his connection with the wagering operations was such as to make him liable under the statute for either the occupational or excise taxes. Phillips concedes his participation in the operation of the horse room but argues that the evidence was insufficient to establish that he either filed false applications and returns or willfully attempted to defeat and evade the excise taxes. Sams argues that the evidence was insufficient to sustain his conviction under 7262, supra, failure to pay the occupational tax, or 7203, supra, willful failure to pay the same tax. All three argue that the evidence was insufficient to support the charge of conspiracy. We consider the evidence as it relates to each of the appellants and with particular reference to the arguments advanced on their respective behalfs.
 
 
 5
 The entire second floor of the Garibaldi Building was admittedly under lease to Ciancutti, who entered into possession early in June of 1960. The leased area was a large open room which had been formerly used at various times as a warehouse or dance hall. When Ciancutti took possession he engaged the services of a carpenter who made such alterations as were necessary to convert the premises into a gambling casino and to conceal its operations. These alterations were extensive and included, among other things, the following: the insertion of fiber-board panels in the window frames; the fitting of the entrance staircase with an electrically controlled door at the lower level and a steel door at the upper level; and the erection of partitions enclosing two office areas. The doors were so arranged that a prospective customer could gain admission to the gambling casino only after he had been identified and admitted by a door man stationed inside. Ciancutti also made the arrangements for the installation of utilities, for which he paid the monthly service charges. During the period that the gambling casino was in operation Ciancutti was in attendance almost daily.
 
 
 6
 Between a date early in April and August 24, 1961, the Garibaldi Building was under surveillance by special agents of the Internal Revenue Service, one of whom first gained access to the gambling casino on April 23. Thereafter he visited the casino two or three times a week, and on each visit remained on the premises during the usual business hours, placing wagers and observing the operations. At various times the said agent was accompanied by either one or two other special agents, who likewise placed wagers and observed the operations. The results of their observations are fully described in their testimony and can be briefly summarized.
 
 
 7
 The wagering operations were conducted daily during the afternoon hours and there were usually in attendance 80 or more customers. There were made available for use by these customers printed betting slips, daily racing forms and other materials usually found in a horse room. After the races had been run the results were posted on a large blackboard which extended along the south side of the main room.
 
 
 8
 The center of the wagering operations was an office, designated in the testimony as the 'southern enclosure' in which a special tax stamp issued to Phillips and another issued to one Mangini were conspicuously displayed. The main area of the casino was manned by eleven or twelve employees, designated as 'floor men,' who received the wagers on behalf of their principals and then turned them in at the office.
 
 
 9
 Sams was in attendance at the casino almost daily during the afternoon hours and when there assumed charge of the office. He received wagers turned in by the floor men, checked betting slips, handled the tally sheets and supervised the distribution of winnings. When Sams was not present these duties were performed by either Phillips or one Carlucci. The wagers received by the floor men were delivered by them at the office to Sams, Phillips or Carlucci. On occasions both Sams and Phillips would physically receive wagers directly from the bettors; in fact, on numerous occasions the special agents placed their wagers with either Sams or Phillips.
 
 
 10
 Ciancutti concedes that he did not pay the special tax imposed by 4411, supra, but maintains that he was under no obligation to do so. He took the witness stand and admitted that he had leased the entire second floor of the Garibaldi Building and had converted it into a gambling casino. However, he testified that he had sublet the area in which the wagering operations were conducted and that his sole proprietary interest was in the gaming activities. Absent this testimony, to which the jury apparently gave no credence, there was ample evidence from which the jury could have found that Ciancutti was one of three entrepreneurs in a profitable gambling business, which included the horse room operations.
 
 
 11
 This appellant also contends, but in the alternative, that the evidence was insufficient to sustain his convictions under either 7203 or 7262, supra. A similar contention is advanced on behalf of Sams. They argue that there is no evidence in the record that they had knowledge of their obligation to pay the occupational tax imposed by 4411, supra, and therefore should not have been found guilty of either a failure or willful failure to pay it. This argument is without merit. Ingram v. United States, 360 U.S. 672, 79 S.Ct. 1314, 3 L.Ed.2d 1503 (1959); United States v. Minker, supra; United States v. Marquez, 332 F.2d 162 (2nd Cir.1964); United States v. Shaffer, 291 F.2d 689 (7th Cir.1961), cert. den. 368 U.S. 915, 82 S.Ct. 192, 7 L.Ed.2d 130. While there is no direct evidence that they knew of the occupational taxes there was ample circumstantial evidence from which the jury could have inferred that they had knowledge of the taxes and willfully failed to pay them. Ibid.
 
 
 12
 Phillips challenges the sufficiency of the evidence to sustain his convictions under 7206(1), supra, which makes it an offense for any person to willfully make and subscribe a return or statement 'which he does not believe to be true and correct as to every material matter.' The challenge rests on utterly trivial grounds which merit no discussion. The evidence was more than sufficient to support the convictions.
 
 
 13
 On March 2, 1961, this appellant made and subscribed an application and return in which he purportedly furnished the material information required under 4412 of Title 26 U.S.C. He filed a similar application and return on June 30, 1961. The appellant stated in each of these documents, in response to pertinent questions therein contained, that: his place of business was at 1809 Fourth Avenue, Arnold, Pennsylvania; he was in the business of accepting wagers on his own account; he did not receive wagers for or on behalf of any other persons; and, he had no employees or agents engaged in receiving wagers on his behalf.
 
 
 14
 The patent falsity of Phillips' statements was established by clear and persuasive proof that: the appellant and two others had a proprietary interest in the wagering operations conducted at 1195 Fifth Avenue, New Kensington; this was their only place of business; they were engaged in accepting wagers on behalf of their joint enterprise; and, they employed at least twelve floor men who were engaged in receiving wagers on their behalf. There was substantial evidence, direct and circumstantial, from which the jury could have found that Phillips acted as a front and made the false statements with the willful intent to conceal the magnitude of the wagering enterprise, its location and the proprietary interest of Ciancutti and Sams. United States v. Shaffer, supra.
 
 
 15
 Phillips and Sams contend that the evidence was insufficient to support their convictions under 7201, supra, which makes it a felony for any person to attempt 'in any manner to evade or defeat any tax imposed by' the Internal Revenue Code. The crucial question raised by this contention is whether the evidence was sufficient to establish that the filing of an incorrect return for the month of August, 1961, was prompted by a 'willful attempt' to evade and defeat the taxes for the said month. It is necessary to consider the evidence as to Phillips separate and apart from the evidence as to Sams.
 
 
 16
 Phillips held a special tax stamp and posed as the sole owner of the wagering operations. As required by the pertinent regulations, he filed separate returns for the months of April, May, June and July of 1961, and for the respective months reported and paid excise taxes in the amounts of $391, $371, $397 and $390. These payments reflected gross wagers for the respective months in the amounts of $3910, $3710, $3970 and $3900. On each of the said returns his place of business was recorded as 1809 Fourth Avenue, Arnold, his place of residence. It is inconceivable that a large-scale wagering enterprise, employing twelve floor men in addition to three owners, could have been maintained for a period of more than a year on a gross return of less than $4000 per month.
 
 
 17
 There is ample evidence that Phillips prepared, subscribed and filed the tax return for the month of August. This return was substantially in accord with those filed for the earlier months. Phillips reported gross wagers in the amount of $3200 and a payable tax of $320. An audit of the betting slips found in the casino on the date of the raid, August 24, disclosed gross wagers received for the said month in the amount of $7973, and of this amount $5984 was received on the day of the raid and approximately $1600 on the prior day. The gross amount of wagers received exceeded that reported by more than $4700, and the taxes due thereon exceeded those reported by more than $475. The majority of the betting slips found on the premises reflected only the wagers received on August 23 and 24; there were found only eight slips reflecting wagers received on the preceding days. The 'daily record showing the gross amount of all wagers,' required by 4403 of Title 26 U.S.C., was not found and Phillips offered no explanation for its absence.
 
 
 18
 We recognize that the mere proof that a taxpayer has understated his gross income will not support a charge made under 7201, supra, in the absence of further independent proof that the understatement was accompanied by a specific intent to evade or defeat the taxes lawfully due. Holland v. United States, 348 U.S. 121, 139, 75 S.Ct. 127, 99 L.Ed. 150 (1954); United States v. Holovachka, 314 F.2d 345, 357 (7th Cir.1963), cert. den. 374 U.S. 809, 83 S.Ct. 1695, 10 L.Ed.2d 1033; Black v. United States,309 F.2d 331, 337 (8th Cir.1962), cert. den. 372 U.S. 934, 83 S.Ct. 880, 9 L.Ed. 765; Blackwell v. United States, 244 F.2d 423, 429 (8th Cir.1957), cert. den. 355 U.S. 838, 78 S.Ct. 49, 2 L.Ed.2d 50. Such intent may be inferred from conduct the likely effect of which would be to mislead or conceal. Ibid. There is ample evidence in the record that Phillips was guilty of such conduct. This evidence, submitted to the jury without refutation, was more than sufficient to prove Phillips guilty of 'willfully' attempting to evade and defeat his tax liability. Ibid.
 
 
 19
 The evidence relating to Sams' participation in the wagering enterprise was summarized hereinabove. We are of the opinion that this evidence, considered in its entirety and in the light most favorable to the government, although sufficient to support his convictions under 7203 and 7262, was insufficient to sustain his conviction under 7201. The conviction of Sams on count 2 of the indictment must therefore be reversed.
 
 
 20
 The appellants contend that the evidence was insufficient to support their convictions on the charge of conspiracy. The decision of the Supreme Court in the case of Ingram v. United States, supra, is dispositive of the question raised and the contention must therefore be rejected as without merit.
 
 
 21
 Giorano was convicted on only one count charging a willful failure to pay the occupational tax. He challenges the sufficiency of the evidence to sustain the conviction and advances in support thereof the same arguments advanced by Sams and Ciancutti. The arguments are without merit. There is ample evidence from which the jury could have found, as it did, that: Giorano was engaged in receiving wagers on behalf of the owners of the enterprise; he was fully aware of his statutory obligation to pay the occupational tax; and, he willfully failed to pay it.
 
 
 22
 The court below imposed separate fines on the appellants Ciancutti, Sams and Phillips and on each count of the indictment on which they were convicted; on the first count charging them with conspiracy each of the appellants was sentenced to a term of imprisonment of two years. The judgment entered as to each appellant provided that the term of imprisonment would 'be suspended upon payment of all the fines' but failed to provide for probation. This suspension of the term of imprisonment was void for two reasons: it was conditional, and, in effect, indefinite.
 
 
 23
 The authority of a district court to suspend either the imposition or execution of sentence is derived from 3651 of Title 18 U.S.C., which provides in pertinent part as follows: '* * * any court having jurisdiction * * *, may suspend the imposition or execution of sentence and place the defendant on probation for such period and upon such terms and conditions as the court deems best.' The same section provides that the period of probation 'shall not exceed 5 years.' Where an offense of which a defendant has been convicted is punishable by fine, imprisonment or both, there are available to the court several alternatives, only one of which is pertinent here.
 
 
 24
 Where the district court has, in addition to the imposition of permissible fines, sentenced the defendant to a term of imprisonment, it may suspend the execution of the term of imprisonment, place the defendant on probation for a specified period, and prescribe the terms and conditions of that probation. The court may not, as it did here, suspend the execution of a term of imprisonment without placing the defendant on probation for a specified period. Miller v. Aderhold, 288 U.S. 206, 53 S.Ct. 325, 77 L.Ed. 702 (1933); Ex Parte United States, 242 U.S. 27, 37 S.Ct. 72, 61 L.Ed. 129 (1916); United States v. Graham, 325 F.2d 922 (6th Cir.1963). A judgment which purportedly suspends the execution of a term of imprisonment indefinitely lacks finality and is therefore a nullity. Ibid. The judgment in this case is subject to a further objection. The suspension of the execution of a term of imprisonment which is made conditional upon payment of the fines imposed is not authorized by the statute. Horton v. United States, 151 F.2d 406 (5th Cir.1945). Those portions of the judgments relating to the suspension of sentence must be vacated and corrected.
 
 
 25
 The judgments of conviction, except that relating to Sams on the second count of the indictment, will be affirmed. The conviction of Sams on the second count will be vacated. The action will be remanded to the court below with directions to correct the sentences.