**UNITED STATES of America,
Appellee,**

v.

**Thomas PEPE also known as Thomas F.
Pepe, Appellant.**

**No. 14883.**

United States Court of Appeals
Third Circuit.

Argued Jan. 4, 1965.

Reargued Nov. 18, 1965.

Decided May 12, 1966.

Edmund N. Carpenter, II, Wilmington, Del. (Richards, Layton & Finger, Wilmington, Del., on the brief), for appellant.

Alexander Greenfeld, U. S. Atty., Wilmington, Del. (Daniel H. Cochrane, Atty., I. R. S., Philadelphia, Pa., on the brief), for appellee.

Before KALODNER, Chief Judge, and McLAUGHLIN and SMITH, Circuit Judges.

McLAUGHLIN, Circuit Judge.

Appellant was convicted of wilfully and knowingly attempting to evade and defeat a large part of his 1957 income tax by filing and causing to be filed a false and fraudulent income tax return.

The principal argument advanced on behalf of appellant is that the evidence presented by the Government does not support a conviction, A. because "wilful" act of evasion was not proved beyond a reasonable doubt and B. substantial understatement was not proved beyond a reasonable doubt.

Pepe has been a professional gambler in Wilmington, Delaware since some time prior to 1951. In 1953 he became a principal or banker in the numbers gambling game. He continued in that activity through 1957, the critical year. An accountant, Joseph J. Ciconte, beginning in 1953, set up a bookkeeping system of Pepe's numbers game and worked for Pepe on this and generally with reference to his income taxes down to and including 1957.

The accountant was a trial witness for the Government. He said that when he started taking care of Pepe's income taxes deriving from his numbers game "I told him [Pepe] I would have to set him up just like I do any other of my accounts that I would set up as a new business; have records, keep records, and record everything taken in and at the end of the year pay the income tax on it." According to him, he obtained his information regarding Pepe's gross income from the numbers game and the payoffs mostly by telephone from Pepe, sometimes from Pepe personally. He never did see any books of Pepe but later on received adding machine tapes with the supposed gross amount of plays, the hits [1] and expenses. As to the nature of those tapes the witness said that Pepe "* * * would record on a tape how much each one—the number plays, and then I would take that and record it in my cash book."

Pepe also owned a confectionery store. For income tax purposes he gave his accountant purchase vouchers and invoices from the store but no receipts for sales. He kept no records of his store sales. The sales figures were increased to cover Pepe's expenditures for which there were no records. These included gambling transactions of Pepe.

Ciconte testified at considerable length, including exhaustive cross-examination. He explained that for Pepe's income tax purposes he had used a "capital expenditures—net worth basis." In this he had to rely on information from Pepe regarding the latter's expenditures. The Government's trial position was that Pepe did keep some business records but these were incomplete and inaccurate and that it was impossible to arrive at Pepe's true taxable income from them. In that situation the Government in order to establish Pepe's true taxable income for 1957 presented proofs of his net worth for that tax period. From Ciconte, and the other Government testimony and exhibits, the Government, inter alia, presented acceptable evidence to the jury that Pepe had withheld vital information from the accountant who kept his books and prepared his tax returns; had failed to keep adequate numbers receipts records from his lottery enterprise; had concealed both places of business and sources of income; had made

---

1. "Hit" means money paid out to a winning number.

false statements to the Internal Revenue agents regarding certain sources of income.

■ Those proofs, justifiably believed in by the jury, soundly support the necessary element of wilfulness in this indictment as distinguished from alleged negligence on the part of Pepe through his accountant in accordance with the theory of the defense. Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954); Spies v. United States, 317 U.S. 492, 63 S.Ct. 364, 87 L. Ed. 418 (1943); Alker v. United States, 260 F.2d 135 (3 Cir. 1958). On this issue, as we held in United States v. Sams, 340 F.2d 1014, 1016 (3 Cir. 1965), cert. den. 380 U.S. 974, 85 S.Ct. 1336, 14 L.Ed.2d 270 (1965), " * * * we are required to review the evidence, together with all inferences reasonably and logically deducible therefrom, in the light most favorable to the government."

■■ Appellant's contention that the Government failed to satisfactorily prove a substantial understatement of 1957 income by the defendant is not borne out by the record. The Sams rule above noted also applies here. In its difficult task of establishing Pepe's net worth for 1957, the Government by credible and proper trial evidence showed that Pepe's net worth at the end of 1956 was $28,919.30 and that a year later on December 31, 1957, his net worth was $61,842.91, an increase of $32,923.61 in that one year period. In addition his non-deductible expenditures for 1957 were found to be $32,154.46. Those figures left Pepe with an adjusted gross income of $65,078.07. Pepe reported his 1957 gross income as $18,175.59 which left a discrepancy of $46,902.08. There was a trial dispute over whether an item of $709.59 should be included as non-deductible. The Government mistakenly charged this to the defendant instead of to the Emerald Mortgage Company. This was less than two per cent error with respect to the compilation of the particular income there involved. There was no prejudicial trial error in connection with this. The totality of the Government proofs demonstrated a large understatement of income by Pepe which strictly sustained the Government's burden. That evidence was for the jury to pass upon and the jury was justified in believing it.

Appellant urges a number of other points none of which is meritorious or needs extended discussion.

The sustaining of the objection to the question to Agent Ridgeway was entirely within the discretion of the trial judge.

The attempted phase of the cross-examination of the witness Porcelli was clearly improper and correctly so ruled by the court.

■ The information concerning Pepe's payments for purchases of clothing was competent on the question of his expenditures and admissible.

■ The evidence as to the allocation of the purchase price on the Heald Street property was pertinent and competent.

■ Mr. Porcelli's calculation summaries were all based on trial evidence. Their admission into evidence in this net worth case was without error.

From our own examination of the trial record we find no error of substance with respect to the denial by the trial judge of defendant's motions for mistrial.

■ Finally, there are five complaints of the charge to the jury. We find the charge to have been full, sound and fair on the net worth method. There was no issue before the jury about Ciconte's method of calculating Pepe's income tax and there was no call for the court to give the defense request calling for formal approval of it. There was nothing in the trial to validate defense request #31 as stated. It was rightly denied. Upon the whole charge we find no error by the court in dealing with circumstantial evidence. Under the trial facts we find no substantial error in the court's refusal to charge defense request #35.

The judgment of the District Court will be affirmed.