959 F.2d 242
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Javier Aaron DABDOUB-CANEZ, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Francisco Pable CORTEZ-ESPINOZA, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Guillermo SOTO-ESQUER, Defendant-Appellant.
 Nos. 91-10219, 91-10231 and 91-10309.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 12, 1992.
Decided April 9, 1992.
 
 Before REINHARDT, NOONAN and DAVID R. THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 In an opinion filed this date, we held that the district court properly sentenced appellant Javier Aaron Dabdoub-Canez to ten years in prison for his conviction for conspiracy to possess cocaine with intent to distribute. See 21 U.S.C. § 846. In this memorandum disposition we reject the appellants' remaining arguments.
 
 SUFFICIENCY OF THE EVIDENCE
 
 3
 In determining whether evidence is sufficient to support a conviction, the standard is whether, viewing the evidence in the light most favorable to the government, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original).
 
 1. Conspiracy Convictions
 
 4
 "The elements of [a] conspiracy are (1) an agreement to accomplish an illegal objective, (2) coupled with one or more acts in furtherance of the illegal purpose, and (3) the requisite intent to commit the underlying substantive offense." United States v. Pemberton, 853 F.2d 730, 733 (9th Cir.1988). The agreement giving rise to the conspiracy may be either express or inferred from circumstantial evidence. See, e.g., United States v. Ray, 930 F.2d 1368, 1371 (9th Cir.1990), cert. denied, 111 S.Ct. 1084 (1991).
 
 
 5
 Neither Canez nor Espinoza has presented a credible argument that the evidence was insufficient to show they agreed or intended to furnish cocaine to Roth. Espinoza negotiated the sale to Roth during the August 21 meeting, and was present when the sale was completed a few days later. Canez also participated in both the negotiation and sale of the cocaine. At the August 21 meeting he delivered a brick of cocaine for Roth to test. At the second meeting he not only produced the suitcase containing the cocaine, but also assented to the price suggested by Roth and provided tools to help Roth sample the cocaine. When viewed in the light most favorable to the government, a reasonable jury could have found that Canez and Espinoza conspired to sell cocaine to Roth.
 
 2. Possession Convictions
 
 6
 Under 21 U.S.C. § 841(a)(1), possession of a controlled substance may be either actual or constructive. United States v. Disla, 805 F.2d 1340, 1350 (9th Cir.1986). Constructive possession may be demonstrated by direct or circumstantial evidence that the defendant: (1) had the power and authority to dispose of the drug, either personally or through agents, or (2) participated in a joint venture, thereby sharing dominion and control over the narcotics. United States v. Restrepo, 930 F.2d 705, 709-10 (9th Cir.1991).
 
 
 7
 Espinoza and Canez satisfied both tests. Based on their extensive involvement in the negotiation and sale of the cocaine, a reasonable jury could have concluded that both were active participants in a "joint venture" to sell narcotics. Further, Espinoza was the primary negotiator for the group, which indicated he had authority to dispose of the cocaine. While Canez did not actively negotiate with Roth, he did assent to Roth's proposed price of $19,500 per kilogram. This suggests that he also had authority to sell the cocaine.
 
 
 8
 Esquer contends he was simply an agent for Canez and Espinoza, without any independent authority to dispose of the cocaine. See United States v. Barnett, 468 F.2d 1153, 1155 (9th Cir.1972) (a casual facilitator of a narcotics sale does not necessarily "possess" the drugs). In support of his claim, Esquer points to the fact that he had to check with his partners before agreeing to sell Roth cocaine during their initial meeting.
 
 
 9
 While this statement may indicate that Esquer lacked independent authority to dispose of the cocaine, it also supports the view that he was involved in a joint venture to sell the cocaine. Esquer stated that he needed to contact "his partners" before concluding the deal. This indicates Esquer was more than just a salesman. Further he introduced Espinoza as "my partner, my guy" during the first meeting at Canez's house. Finally, he actively participated in the negotiation and sale of the cocaine. Based on this evidence, a reasonable jury could have found that Esquer violated section 841(a)(1) by participating in a joint venture with Espinoza and Canez to sell cocaine.
 
 3. Espinoza's Weapons Conviction
 
 10
 During the police raid, Espinoza drew a handgun from his waistband and pointed it at one of the arresting officers. The gun was cocked and loaded. A nearby officer saw this and assumed a firing position. Espinoza then lowered his gun and surrendered.
 
 
 11
 18 U.S.C. § 924(c)(1) makes it illegal to use or carry a firearm "in relation to" a drug trafficking crime. Espinoza admits to carrying a gun. He argues, however, that the evidence was insufficient to show he carried the gun "in relation to" the cocaine sale.
 
 
 12
 Espinoza never explained why he cocked the gun, why he pointed it at the officer, or why he took such an active role in negotiating the sale if he was only a disinterested observer. Rather, it is reasonable to infer from these facts that Espinoza participated in the cocaine sale and carried the gun to assure that the transaction went smoothly.
 
 IMPEACHMENT EVIDENCE
 
 13
 Espinoza told the jury about his two prior convictions when he testified. The prosecution never commented on this evidence during cross-examination. Espinoza now argues that the judge's comments in chambers, indicating that he would allow the prosecution to introduce these convictions, constituted an improper in limine ruling under Fed.R.Evid. 609.
 
 
 14
 Espinoza's argument is foreclosed by United States v. Williams, 939 F.2d 721 (9th Cir.1991). In Williams, the district court ruled in limine that the prosecution could introduce evidence of the defendant's prior convictions under Rule 609. Before the prosecution had the chance to introduce this evidence, the defendant himself placed the convictions before the jury during direct examination. This court concluded that by doing so, the defendant "waived his right to appeal the district court's in limine ruling that the evidence was admissible under Rule 609(a)(1)." Id. at 725.
 
 
 15
 Just as in Williams, Espinoza waived his right to appeal the district court's in limine ruling by placing his convictions before the jury on direct examination.
 
 AMOUNT OF COCAINE
 
 16
 21 U.S.C. § 841(a)(1) makes it unlawful to knowingly possess cocaine with the intent to distribute. If the violation of this section involves "5 kilograms or more of a mixture or substance containing a detectable amount of ... cocaine," the trial court is required to sentence the defendant to a minimum of ten years in prison. 21 U.S.C. § 841(b)(1)(A)(ii)(II).
 
 
 17
 The government's narcotics witness testified that the aggregate weight of the cocaine recovered from Canez's house was 9.9 kilograms. Of this amount, only 2.77 kilograms was pure cocaine. The rest was a combination of boric acid and sugar. On cross-examination, the district court precluded Canez from asking the expert any more questions concerning the exact composition of the cocaine mixture. According to Canez, this prevented him from effectively arguing that he should not be convicted of possessing cocaine because he had at most 2.77 kilograms of the drug.
 
 
 18
 A defendant can be convicted of possessing cocaine regardless of the amount involved. United States v. Soto-Rivera, 931 F.2d 1317, 1319 (9th Cir.1991). Quantity is only "relevant to the penalty provisions of section 841(b), and is a matter for the district court at sentencing." Id. Canez admits he possessed at least 2.77 kilograms of cocaine. Any detailed inquiry into the exact composition of the mixture was therefore irrelevant to his possession conviction.
 
 
 19
 The appellants' convictions are AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3